W. T. TROTTER, Administrator, Appellant, v. CHICAGO, ROCK
ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

RAILROADS:   Negligence—Trespassers—Only Duty Not to Injure
1   Willfully or Wantonly.   No duty toward a trespasser arises until
he is actually seen in a position of peril, and the extent of the
duty then is, not to injure him wantonly or willfully, and to do
everything that can reasonably be done to avoid injuring him.

TRIAL:   Direction of Verdict—Review—Favorable Inferences to
2   Losing Party.   In determining whether a verdict was rightfully
directed, it is the duty of the Supreme Court to give the party
against whom the verdict has been directed, the most that can
reasonably be claimed for the effect of his testimony and the
inferences therefrom.

RAILROADS:   Negligence—Trespassers—Duty to Warn after Dis-
3   covering Peril.   Where a trespasser was seen in such a place that
there was no reason to anticipate his going on the railway track,
there was no negligence in not slowing up the train or giving him
warning.

*Appeal from Washington District Court.*—JOHN F. TALBOTT,
Judge.

APRIL 10, 1919.

THE trial court instructed a verdict in favor of the de-

fendant. It sustained a motion to direct verdict, generally. Its action must be sustained here if any of the grounds of the motion were well taken. Plaintiff contends that none of them were.—*Affirmed.*

*Gibson & Davis* and *Chas. A. Dewey,* for appellant.

*F. W. Sargent, Eicher & Livingston,* and *Robert J. Bannister,* for appellee.

SALINGER, J.—I. The petition alleges that the plaintiff's decedent was walking along and upon defendant's railroad track in the town of Ainsworth, in a westerly direction, and in walking, followed the main track; that, while so walking along and upon the track, he was approached from the rear by a passenger train of the defendant; that the engineer and other employees of defendant in charge of the train saw him on, along, and upon the track over which the train was about to pass, and in position of danger from the approaching train; that the employees had knowledge decedent did not hear or know of the approach of the train, knew that a strong wind was blowing from the place where the train was toward where decedent was walking, knew that this wind hindered decedent from hearing the noise of the approach of the train; that they saw decedent in a position of danger in plenty of time to have given warning, and to permit decedent to reach a place of safety; that the employees had the means, opportunity, and ability to give warning and notice of the approach of the train after they saw decedent, and if they had used these means, it would have enabled decedent to reach a place of safety; that the employees, having seen decedent in a position of danger, and having full knowledge of his peril, negligently failed to give any warning of the approach of the train, negligently failed to slacken the speed of the train, or to make any attempt to protect decedent; that they willfully and wantonly and

with gross carelessness and negligence, as aforesaid, ran upon and against decedent, and so the train struck him from behind and caused his death; and that the failure to blow a whistle or give any alarm of the approach of the train, after seeing decedent in a position of danger, was grossly negligent, careless, willful, and wanton, and was the direct cause of the killing of decedent.

The decedent of the plaintiff was confessedly a trespasser. There was no duty on the defendant to slacken the speed of its passenger train, or to give an alarm by bell, whistle, or otherwise to protect *possible* trespassers. In other words, there was no duty to anticipate that there would be a trespasser on or near the track, and in that anticipation to slacken speed or give warning. There was no duty towards this trespasser until he was actually seen in a position of peril. When thus seen, there was a duty not to injure him wantonly or willfully, and a duty to do everything that could in reason be done, after his peril was perceived, to avoid injuring him. This is the extent of the duty, even where the trespasser is an infant, who cannot be charged with contributory negligence. *Papich v. Chicago, M. & St. P. R. Co.*, 183 Iowa 601, and cases therein cited. In that case, it is said:

1. RAILROADS : negligence : trespassers : only duty not to injure willfully or wantonly.

"Since no duty to the trespasser arises until he is actually seen, it follows, of necessity, no care is due him before his peril is known. On that theory the general rule has been worked out that an owner of property trespassed upon is not liable for an injury resulting from the trespass, merely because care might have successfully guarded against such injury;" that, until the trespasser is seen in a position of peril, there is no duty to give warning; that the railroad need not take into consideration that there may be trespassers on its line; that it "owes the trespasser no duty, and is not required to be on the lookout for him."

It becomes plain, then, that the essence of the petition is its charge that the defendant, after it knew the trespasser to be in a position of peril, wantonly refrained from all attempts to avoid injuring him, though successful attempts might have been made.   Therefore, whether there was anything to go to the jury on depends wholly upon whether a jury would have been warranted in finding that this charge was true.   It does not matter that no warning was given, nor that the speed of the train was not slackened.   The right to go to a jury depends upon whether there is any substantial evidence that the engineer knew the trespasser was in a place of peril, and with that knowledge failed to use means at hand which would have saved the trespasser from injury.

No one speaks from personal knowledge as to just what the situation was at the very instant when the train struck decedent.   One Woodburn did not see decedent until just before the latter was struck.   This witness is unable to say whether decedent was walking on the track, or at the side of the track in a path parallel with the track.   If decedent was walking on this path, the oncoming train could not injure him, and seeing him there would not be seeing him in a place of peril.   His position could become perilous only if he left the path, climbed a rise of some 18 inches, and then turned north and went upon the track.   Wheeler was some 150 feet from the place where the accident occurred.   He says he saw a hat that moved west as the train came on, and that "it did not look like it (the hat) moved very much toward the track.   The hat looked to be four or five feet north of the north rail of the track, before it (the hat) moved south, as I have described."   Assuming for the plaintiff that Wheeler is describing the decedent, all that plaintiff may claim from this testimony is that decedent was walking on the path, when first seen by the witness, and that then he seemed to turn toward the track.   All the remaining testimony consists of statements said to have been made by the

engineer. Woodburn testifies that, in talking to him about the accident, the engineer said, "It seemed just like, an instant before the engine got there, he stepped on a stone and tripped toward the engine, is the way it looked to me;" that the engineer had seen the man before, but "supposed he would get out of the way; he supposed he was far enough away so he would not hit him." On cross-examination, Woodburn says that what the engineer told him was that the engineer saw the man,—thought he was far enough away that he would not hit him; that he was walking beside the track, and it seemed to the engineer that, just as he got up to him, he stumbled, or stepped toward the track.

According to the witness Smylie, the engineer said he saw "the man walking in the path along the right of way, and he was not in any danger until he came within an engine's length of him. He seemed to stumble sidewise in front of the engine." According to Woods, the engineer said he saw the man "walking along the side of the track, and that he stumbled toward the train; that he was walking in that path ahead of the train, and he stumbled toward the train and the timber,—the cross-timber on the engine; that he saw the man walking in this path. When it got close to him, he tripped or stumbled toward the engine."

On determining whether a verdict was rightly directed against a party, it is our duty to give that party the most that can reasonably be claimed for the effect of his testimony and inferences to be drawn therefrom. When we do so here, what have we? The utmost of it is that a man was seen walking ahead of an oncoming train, on a path beside the track, and where he was safe; that, when the train was practically up to him, he left the path and went upon the track, and did this without giving any

2. TRIAL: direction of verdict: review: favorable inferences to losing party.

indication that he intended leaving the path for the track. We are unable to find in this any evidence of a wanton failure to give warning. All that was seen during the time when warning might have been effective was a trespasser in a safe place. It was not negligence in that situation to refrain from giving warning or to slow up the train. It all comes to this: How can it be said there was the wantonness which enables a trespasser to recover, when he went from a place of safety upon the track, so suddenly that no diligence on part of the train crew could save him? As said, we think the *Papich* case, supra, quite fully rules this case. *Sandell v. Des Moines City R. Co.*, 184 Iowa 525, gives some support to the action of the trial court. That was a case where a woman in a buggy drove by the side of a street car track, and parallel with the direction in which a car was approaching on that track. She would have remained in safety, had she continued in the direction she was going when the street car crew saw her; but without warning, she suddenly turned, and went across the track. We think, too, that *Walters v. C., R. I. & P. R. Co.*, 41 Iowa 71, at 76, gives more or less support to the direction of this verdict. And see *Oaks v. Chicago, R. I. & P. R. Co.*, 174 Iowa 648. All that we can find in *Clemens v. Chicago, R. I. & P. R. Co.*, 163 Iowa 499, is that, when applied to the record here, about all that it accomplishes is to hold that the doctrine of last clear chance has no application in this case. And it is our opinion that that doctrine is not involved here. The case of *Christiansen v. Illinois Cent. R. Co.*, 140 Iowa 345, is not applicable, because in that case no trespasser is involved.

On the whole, we are satisfied that the court rightly instructed a verdict for the defendant.—*Affirmed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.

*Marginal note:*

3. RAILROADS: negligence: trespassers: duty to warn after discovering peril.