MARGARET BENNETT, Administratrix, Appellee, v. ATCHISON, TO-
PEKA & SANTA FE RAILWAY COMPANY, Appellant.

RAILROADS: Negligence—Duty to Trackwalker. A railway train
1 crew is under no legal obligation to slacken speed, blow the whistle,
or maintain a lookout for the benefit of an experienced trackwalker,
who has good eyesight and hearing, intimate knowledge of the
track in question, and ample knowledge of the operation of trains.

NEGLIGENCE: Basing Negligence on Presumption of Care. The pre-
2 sumption of due care on the part of a person who is killed, without
any eyewitness to the transaction, does not authorize the building
of the further and additional presumption that the party who killed
him was negligent.

NEGLIGENCE: Last Clear Chance—When Rule not Applicable. Prin-
3 ciple reaffirmed that the doctrine of the "last clear chance" has no
application where the injured party was not seen at any time
before he was injured.

TRIAL: Instructions—Submission of Unsupported Issues. Wholly un-
4 supported issues must not be submitted to the jury. So held where
the issue was on the material allegations (1) that the track was
*straight*, and (2) that the train crew *could* and *did* see the deceased
in time to prevent the injury, and where the evidence conclusively
established a contrary state of facts.

RAILROADS: Federal Employers' Liability Act—Negligence as Neces-
5 sary Element. The Federal Employer's Liability Act does not
authorize a recovery of damages against a defendant who is guilty
of no act of negligence. Evidence attending the death of a track-
walker on a curve in a cut while two trains were passing at high
speed reviewed, and held to show no act of negligence on the part of
the defendant's train crews.

RAILROADS: Federal Employers' Liability Act—Assumption of Risk.
6 No specific pleading is necessary, under the Federal Employers'
Liability Act, to raise the issue that the injured employee assumed
the risks incident (1) to his ordinary work, and (2) to his viola-
tion of rules promulgated for his own safety.

RAILROADS: Federal Employers' Liability Act—Necessary Proof in
7 re Dependency. Plaintiff, suing as a dependent under the Federal
Employers' Liability Act, must show: (1) That she was dependent
on the deceased; (2) the extent to which the deceased contributed
to her support; (3) the probable time the deceased would have

continued to so contribute; and (4) the present worth of the sum total of the probable contributions. It follows that the life expectancy of *both* the deceased and the dependent plaintiff becomes very material.

*Appeal from Lee District Court.*—HENRY BANK, JR., Judge.

## JUNE 25, 1921.

### REHEARING DENIED OCTOBER 1, 1921.

ACTION for damages under the Federal Employers' Liability Act, instituted by Margaret Bennett, as administratrix of the estate of Frank M. Bennett, deceased, against the Atchison, Topeka & Sante Fe Railway Company, predicated on the negligence of defendant railway company, causing the death of the said Frank M. Bennett, who, at the time of his death, was in the employ of the railway company as trackwalker. The opinion states the facts. Verdict of jury, finding for the plaintiff in the sum of $5,000, and judgment entered accordingly. Defendant appeals.—*Reversed.*

*Cyrus Crane, George J. Mersereau, J. M. C. Hamilton,* and *Hazen I. Sawyer,* for appellant.

*Hughes, Rankin & Dolan,* for appellee.

DE GRAFF, J.—On the 12th of July, 1915, Frank M. Bennett, an employee of the defendant railway company, met his death while in the performance of his duties as a railroad track repairer and trackwalker, near the town of New Boston, Lee County, Iowa. The section of track over which Bennett had jurisdiction for inspection purposes was four miles long, and started at New Boston. It was his duty to see that there were no broken rails and no bolts loose, and that the tracks were otherwise safe for railroad traffic. He had walked this section, in the performance of his duties, for four or five years, and was thoroughly acquainted with the character of the track and the physical environments. He walked this particular portion of the defendant's track once every day, and from his experience knew the time of trains. He worked under the specific directions and instructions of the

1. RAILROADS: negligence: duty to trackwalker.

section foreman in that vicinity. The track at the place in question is a double track. The trains going west move on the north track, and the trains going east move on the south track. There is a bridge over Sugar Creek, a little less than three miles west of New Boston, and, about one mile east of this bridge, there is a cut through a curve on the right of way.

Bennett was killed about a mile and three quarters west of the New Boston station. In the four miles of this section under his care as trackwalker, there are a number of cuts, fills, and curves, with which he was intimately familiar. Ordinarily, it required about four hours to walk over and inspect the section assigned to Bennett. On the day of the accident, Bennett started west, in the performance of his duties, about 1 o'clock in the afternoon, and the accident causing his death happened about 4 o'clock. It was daylight. He started west on the east-bound track, and, at the time he was struck, he was on his return trip. There was no eyewitness to the accident, and consequently no witness directly testifies as to the manner, place, or surrounding facts of the accident. The rule of the railway company required him to walk on the east-bound track when he traveled west, and to walk on the west-bound track when he traveled east. The purpose of this rule of walking against traffic was to enable him to avoid danger of being struck by an approaching train. He was also under specific instructions to step clear of all tracks, to avoid a train; and, if he were on the south track and saw a train approaching, he would step off on the south side, and if he were on the north track, he would step off on the north side. The passing of trains in this cut was a frequent occurrence. The foreman testified that he had given the foregoing instructions to Bennett several times, and in the year 1915 had read a letter of instructions issued by the railway company in regard to trackmen in the performance of their duties.

Each track is standard gauge, 4 feet 8½ inches, and the distance between the double tracks is 14 feet centers. The roadbed is gravel, and the gravel extends beyond the ends of the 8-foot ties, a distance of 4 feet 10 inches. The track going east is called a curve to the left, and going west, a curve to the right, and is a 2 or 3-degree curve. The cut itself is from 25 to 30 feet deep, and the curve from its east point to its west is

1,100 feet. The topography of the situation enables a person to walk or stand between the toe of the gravel of the track and the side of the embankment, and the distance from the gravel road-bed to the edge of the embankment was uniform throughout the cut. Nothing prevented a person from walking up the embankment on either side of the tracks.

On the day in question, a passenger train of the defendant company was traveling west; and, as it approached the curve, it sounded its whistle, which the deceased undoubtedly heard; and he must have stepped over and across to the south track, when an east-bound freight train of the defendant company struck Bennett, causing his instant death.

The place of the engineer, under rule, is on the right side of the cab, and the fireman's place is on the left. The freight locomotive in question belonged to the 3,100 class of engines, and, by reason of its mammoth size, it was not possible for the engineer to look ahead over the boiler, and by reason of the curve in this cut, the engineer was not able to look ahead around the curve and see a person on the track for a considerable distance from the point of the accident. The engineer did not see Bennett prior to the accident, and was not aware, at the time, that an accident had happened. Apparently, the striking of the engine against a shovel which Bennett was carrying called the attention of the engineer to the fact of striking something, and by reason of this fact, the train was stopped. The fireman of the freight engine, at the time of the accident, was shaking the grates and shoveling coal, and consequently, by reason of the performance of his duties, did not see Bennett upon the track, nor was he aware that an accident had happened until the engineer made the remark about the metallic sound which he had just heard. The rule of the road requires the enginemen to keep their heads inside of the cab.

The engineer, the fireman, and the brakeman on the freight train testified positively that the whistle was blown, on approaching this cut. The brakeman, at the time, was on the tender of the engine, and testifies that he has a distinct recollection of the whistle's being sounded at that time, for the reason that the engine whistle blew the steam back in his face. One witness on plaintiff's direct examination and three on rebuttal

negative this testimony, by stating that they did not hear the whistle. No highway crossings were on this line of track "within a mile or so of this curve."

The deceased, at the time of his death, was 51 years of age, in prior good health, and was possessed of good eyesight and hearing. He was receiving $1.50 per day. He left surviving him his widow, Margaret Bennett, whose age is not disclosed by the record, and 2 boys, Harry and Elmer, 23 and 21 years of age, respectively, and a married daughter, Mrs. Renz.

This action arises under the provisions of the Federal Employers' Liability Act (U. S. Comp. Stats., Sections 8657 to 8665). The requirements and Federal court interpretation of the act prevail over any state law or rule of interpretation of a state court. *Pryor v. Williams,* 254 U. S. 43 (41 Sup. Ct. Rep. 36); *Michigan Cent. R. Co. v. Vreeland,* 227 U. S. 59.

The facts disclosed by this record are not in dispute, unless it may be said that the testimony is in conflict with respect to the blowing of the whistle on the freight engine, prior to approaching the cut or curve. This duty, however, was not owed to Bennett, under the facts of this case.

Clearly, there was no negligence on the part of the engine crew, either of omission or commission. *Southern R. Co. v. Gray,* 241 U. S. 333 (60 L. Ed. 1030); *Long v. Southern R. Co.,* 155 Ky. 286 (159 S. W. 779); *Nelson v. Southern R. Co.,* 246 U. S. 253 (62 L. Ed. 699). Bennett was a trackwalker, and the fact that he was struck by defendant's engine carries no presumption that the defendant was negligent. *Smith v. Illinois Cent. R. Co.,* 200 Fed. 553. Nor does any presumption arise against the defendant from the presumption that the decedent was in the exercise of due care immediately prior to the accident, by reason of the fact that there was no eyewitness to the accident.

2. NEGLIGENCE: basing negligence on presumption of care.

In *Looney v. Metropolitan R. Co.,* 200 U. S. 480 (50 L. Ed. 564), it is said:

"But the negligence of a defendant cannot be inferred from a presumption of care on the part of the person killed. A presumption in the performance of duty attends the defendant, as well as the person killed. It must be overcome by direct evidence. One presumption cannot be built upon another."

See, also, *Great Northern R. Co. v. Wiles,* 240 U. S. 444 (60 L. Ed. 732).

The burden of proof was upon the plaintiff, to establish by a preponderance of the evidence the causal connection between the alleged negligence and the injuries complained of. The un-

3. NEGLIGENCE: last clear chance: when rule not applicable.

contradicted testimony shows that neither the engineer nor the fireman nor any other of defendant's employees on the freight train saw or could have seen the defendant on the track, at the place where he was killed. This court will take judicial notice of the law of physics that light travels in straight lines.

The doctrine of last clear chance, therefore, finds no application in this case. Actual knowledge of the perilous position of the person injured, in time to have avoided the injury by the use of ordinary care, is necessary to predicate the doctrine of last clear chance in any steam railway case. *Bourrett v. Chicago & N. W. R. Co.,* 152 Iowa 579.

Plaintiff alleged, in the instant case, that defendant was negligent because ''the said track from which the said freight train approached the deceased was straight, and that said train-

4. TRIAL: instructions: submission of unsupported issues.

men did or could have seen the deceased in his perilous position, in time to have prevented the injuries and death of deceased.'' This issue was submitted to the jury, although there was a complete failure of proof in this particular. This was error.

Bennett was a man of large experience as a railroad track-walker and repair man, and was familiar with the general operation of defendant's trains. It is not customary, nor is it obligatory, to notify a trackman of the running of trains by the railroad company; and, although Bennett had a right to use the track in the performance of his duties, he was bound to know that a train might put in an appearance at any moment, and it was obligatory upon him to keep a lookout for his own safety. His duty was as clear as its performance was easy. Neither was it incumbent upon the defendant company to slacken the speed of its trains, in approaching the curve in question; nor does the statute or rule of the company require that a whistle be blown, under such conditions.

''Trackmen are supposed to take note of the coming of

trains; it is a duty enjoined upon them by law 'to observe and keep out of the way of moving engines and cars.' '' *Hoffard v. Illinois Cent. R. Co.*, 138 Iowa 543.

See, also, *Nelling v. Chicago, St. P. & K. C. R. Co.*, 98 Iowa 554; *Stanley v. Minneapolis & St. L. R. Co.* (Iowa), 169 N. W. 181 (not officially reported).

Bennett being an employee of the defendant company, and acting under the rules and directions of said company, which he must respect, in the performance of his duties, the measure of duty by the company to him was not the same as to a passenger or a stranger. Those in control of moving trains have a right to presume that another employee will not put himself in a place of danger and pay no attention to his own safety. *Aerkfetz v. Humphreys*, 145 U. S. 418.

In *Willever v. Delaware, L. & W. R. Co.*, 87 N. J. L. 348 (94 Atl. 595), the testimony disclosed that no warning was given by those in charge of the train, as it approached a point where a section foreman was crossing the track. The action was brought under the Federal statute. It was held that there was no negligence shown by reason of failure to give warning, and that it was the duty of the section foreman to exercise precaution and protect himself from damage arising out of the movement of engines and cars, and that he was so instructed when he accepted the position. See, also, *Connelley v. Pennsylvania R. Co.*, 228 Fed. 322.

The train, in the instant case, was being properly operated, and a duty rested on Bennett to guard himself against defendant's trains. No duty rested on the defendant company to have a lookout on the pilot of the engine. It is not disputed that the engineer was on the lookout. He performed his full duty. The fireman was in the performance of his duties, which made it impossible for him to be engaged in any other line of duty, and consequently no negligence is chargeable to the fireman. It may not be said that the fireman must neglect his regular duties, and remain in his cab keeping a lookout ahead because the engineer is not able to see the track ahead, by reason of the physical environments and the size of his engine. Neither may it be expected that the engine crew could anticipate where a track-walker might be, while engaged in the inspection of the track.

In *Blankenship's Admr. v. Norfolk & W. R. Co.*, 147 Ky. 260 (143 S. W. 995), the deceased was a trackwalker, and, at the time of the accident, was spiking down some rails on the south or east-bound track, when a freight train approached. He stopped work, and stepped off and across to the north track, and was struck by a west-bound train and instantly killed. At this point of the road, the track curved sharply toward the southeast, and the view of the engineer on the west-bound train was obscured by the east-bound train, so that the deceased could not be seen by said engineer until the engine was within 75 feet of where the accident occurred,—too late to stop the train. In the opinion it is said:

"It cannot be said that a trackwalker, whose business it is to be upon the track during the entire working day, is to be supplied with, or is in need of, information as to the approach of trains, for his own protection. He works upon different parts of the track, and his ordinary faculties of sight and hearing are entirely sufficient, and all that are usually required, to protect him against danger from moving trains. * * * We have been referred to no case or authority of any kind which holds that it is the duty of the company to give a trackwalker notice of the approach of trains. * * * It goes without argument that the duty was imposed upon him to take such reasonable care of himself, in the performance of his duties, as would prevent him from being injured by a passing train. In failing to do so in this case, he was guilty of the grossest negligence, for which he can blame no one but himself."

The fundamental difficulty with the instant case, on the facts, is that no one testifies as to how the accident happened. No one saw Bennett go upon the track upon which he was struck. The footprints, as testified to by one witness, indicate that the decedent, while on the west-bound track, saw the approaching train, and stepped over and across the east-bound track to avoid it. Bennett violated a company rule, in crossing to the other track when he should have stepped clear of all tracks, and by so doing would have placed himself in a zone of safety. Plaintiff attempted to account for decedent's presence on the east-bound track by the fact that he might have seen a loose bolt, or something of that sort, on the other track, and went over to fix it.

This is mere conjecture. There is no evidence that such a defect existed.

Under the Federal law, if there was any negligence on the part of decedent proximately contributing to his death, this negligence would not be an absolute defense, but it would mitigate the damages.

5. RAILROADS: Federal Employers' Liability Act: negligence as necessary element.

It was intended by this act to abolish the fellow-servant doctrine, as known to the common law, and introduce the doctrine of comparative negligence. Nevertheless, it is not the purpose of the Federal act to afford relief where one's injuries are due solely to his own negligent and indifferent conduct. *Virginian R. Co. v. Linkous*, 230 Fed. 88; *Great Northern R. Co. v. Wiles*, 240 U. S. 444.

Under the facts in the instant case, the evidence fails to disclose any reason for Bennett's presence on the east-bound track; and to be there was in violation of the rules of the defendant company, of which he was fully cognizant. There is no evidence of any confusion on his part at the time in question. There is no evidence that discloses that it was impossible for him to have stepped into a place of safety; but, on the contrary, there was a place of safety, which he failed to use.

Furthermore, Bennett assumed all the risks incident to his work and to the usual operation of the trains of the defendant company, and also the risks of his violation and disregard of the rules of the company, adopted for his own safety. Defendant pleaded, in its answer, the assumption of risk, and was entitled to an instruction in this particular. A defendant carrier has the Federal right to a fair opportunity to show, in diminution of damages, any negligence attributable to the employee, without specific pleading. *Kansas City So. R. Co. v. Jones*, 241 U. S. 181 (60 L. Ed. 943).

6. RAILROADS: Federal Employers' Liability Act: assumption of risk.

This must be true, also, as to assumption of risk. The common-law rules of assumed risk are not changed by the Federal Employers' Liability Act. *Jacobs v. Southern R. Co.*, 241 U. S. 229; *Baugham v. New York P. & N. R. Co.*, 241 U. S. 237; *Southern Pac. Co. v. Berkshire*, 254 U. S. 415 (65 L. Ed. 196). On assumption of risk, see *Taylor v. Chicago, R. I. & P. R. Co.*, 186 Iowa 506; *Plantz v. Kreutzer & Wasem*, 175 Iowa 562.

One further question, under the errors assigned, may be briefly noted, to wit: the measure of damages, and the instruction of the trial court in this particular. It is clear to us that, in a case of this character, plaintiff must allege and prove (1) dependency and (2) pecuniary loss. This suit was instituted on behalf of the widow and children of the deceased. It was submitted to the jury only so far as it was for the benefit of the widow, the children being of lawful age, and not dependent. The evidence discloses that the decedent was 51 years of age, and that his life expectancy was 20 1/3 years. The age of the widow was not proven, nor her expectancy of life. Her damages could not be measured upon the basis of a longer expectancy than her own, nor a longer expectancy than that of the decedent. In other words, the shorter expectancy would control. No evidence was introduced on the question of her dependency, nor on the amount of support contributed by the deceased from his earnings. Decedent was earning $1.50 per day, and had been in the employ of the defendant for 12 years. From these circumstances, it may be said that the wife was dependent upon his earnings, and received her support therefrom, but not all of his earnings. The case, however, was not submitted to the jury on these circumstances, due to the fact, perhaps, that there was no allegation in the petition alleging dependency or support.

7. RAILROADS:
Federal Employers' Liability Act: necessary proof *in re* dependency.

The trial court instructed that the plaintiff was entitled to recover the sum total of the probable earnings of the decedent for the entire period of his life expectancy, without reference to the widow's expectancy or to what part of the decedent's earnings had previously inured to her benefit. The statement of the rule was in no manner qualified by any instruction as to the present worth of such sum, as representing the pecuniary loss. The instruction read as follows:

"If, from the evidence, under the law as defined in the instructions given you by the court, the jury finds a verdict in favor of the plaintiff, then, in determining the amount of damages to be allowed to the plaintiff as the surviving widow of the said Frank M. Bennett, the jury will take into consideration the expectancy of life of the said Frank M. Bennett, which, ac-

cording to the mortuary tables introduced in evidence, is twenty and one-third years, and also the amount of wages the said Frank M. Bennett was earning at the time of his death, as shown by the evidence, as indicating the amount that he would have been able, if living, to have contributed to the support of his said wife; and the total amount of such support to his wife during the lifetime of the said Frank M. Bennett would be the amount the plaintiff in this case is entitled to recover, in case the jury finds a verdict in favor of the plaintiff.''

We are at a loss to know how the quantum of damages in this case can be ascertained, without proof of her life expectancy and without proof of contributions. The Federal act limits the recovery to those relatives for whose benefit the administrator sues who are shown to have sustained actual pecuniary loss. *Gulf C. & S. F. R. Co. v. McGinnis*, 228 U. S. 173 (57 L. Ed. 785); *Michigan Cent. R. Co. v. Vreeland*, 227 U. S. 59 (57 L. Ed. 417); *Norfolk & W. R. Co. v. Holbrook*, 235 U. S. 625 (59 L. Ed. 392); *Kansas City So. R. Co. v. Leslie*, 238 U. S. 599 (59 L. Ed. 1478); *Chesapeake & O. R. Co. v. Kelly*, 241 U. S. 485 (60 L. Ed. 1117).

In the *Kelly* case, supra, the instruction was condemned because it permitted the jury to ''find a gross sum'' for the plaintiff against the defendant which must not exceed the probable earnings of Kelly, had he lived. This is also true in the instant case, and merits the same criticism. The measure of damages must be accepted according to the principle of law as announced in Federal decisions, and we are bound to follow that rule. Questions of procedure and evidence are governed by the law of the forum.

In the *Kelly* case, supra, it is said:

''We are not, in this case, called upon to lay down a precise rule or formula, and it is not our purpose to do this, but merely to indicate some of the considerations that support the view we have expressed, that, in computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money: in short, that, when future payments or other pecuniary

benefits are to be anticipated, the verdict should be made upon the basis of their present value only.''

We hold, therefore, that the instruction given by the trial court is erroneous, not only in the statement of principle announced therein, but for the reason that there is .no competent proof of the essential elements upon which a correct instruction could be predicated. It is error to submit a case to the jury without evidence to support the proper measure of damages.

The trial court should have sustained defendant's motion to direct a verdict, at the close of all the testimony, for the reason that plaintiff failed to establish the negligence of defendant, as alleged, or any negligence that was the proximate cause of the injuries causing .the death of Frank M. Bennett. By reason of this error, and other errors indicated in this opinion, the judgment entered by the trial court is—*Reversed.*

EVANS, C. J., STEVENS, ARTHUR, and FAVILLE, JJ., concur.

WEAVER and PRESTON, JJ., dissent.