EDWARD STANOSHEK, Administrator, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Appellee.

**NEGLIGENCE: Acts Constituting—Duty to Use Care—Presumption in**
**1   re Avoiding Danger.** Train operatives may very properly assume that an employee approaching a railroad track in the known presence of a rapidly approaching train will not deliberately and suddenly place himself in a place of danger.

**NEGLIGENCE: Proximate Cause—"Last Clear Chance" Doctrine.**
**2** The "last clear chance" doctrine has no application when the injured party was not seen in a place of danger in time to prevent the injury, nor when the contributory negligence of the injured party was the sole proximate cause of the injury.

*Appeal from Johnson District Court.*—RALPH OTTO, Judge.

JUNE 24, 1924.

ACTION instituted by plaintiff, under the Federal Employers' Liability Act, to recover damages for the death of one of the employees of the defendant carrier. Upon the conclusion of plaintiff's testimony, the court sustained defendant's motion for a directed verdict, and entered judgment accordingly. Plaintiff appeals.—*Affirmed.*

*S. K. Stevenson* and *Walter M. Davis,* for appellant.

*J. G. Gamble, R. L. Read, A. B. Howland,* and *Messer, Clearman & Olsen,* for appellee.

De Graff, J.—It is conceded that, at the time that plaintiff's decedent met his death, he was employed by the defendant railroad company, and that the defendant company was engaged in interstate commerce. The case is within the purview of the Federal Employers' Liability Act. The specific items of negligence charged are:

(1) That the defendant was negligent in maintaining its equipment and warnings, in that the defendant did not give warning to the said Joseph Stanoshek of the approach of the train.

(2) That the engineer and fireman in charge of and operating the locomotive saw the perilous position of the decedent, and appreciated his danger, and by the exercise of reasonable care and caution could have stopped said train or warned decedent in time to avoid the accident and prevent the injury.

(3) That the defendant was negligent in failing to keep its electric warning bell in repair.

(4) That the defendant was negligent in operating the train at a high and dangerous rate of speed, with knowledge that men were engaged in work at the point where said accident occurred.

The trial court directed a verdict in favor of the defendant, and this ruling constitutes the one error assigned and argued. The primary proposition presented on appeal involves the rule of the last clear chance.

Plaintiff's decedent was employed as a track laborer, and had long experience in this class of work. He lived but a short distance from the point of the accident for about 32 years, and was quite familiar with the crossing and surrounding circumstances. He had been working in the vicinity of the accident on the preceding day. It appears that, when he was but 5 or 6 feet from the track, the foreman of the section crew called out to decedent to look out for the train. For some reason he did not heed the warning. The decedent had good hearing and eyesight. He had worked continuously as a track man for 25 years.

The topography of the situation discloses that the tracks of the Rock Island, known as the old B., C. R. & N. tracks, run north and south in the city of Iowa City, along what is termed "Maiden Lane." On the west side of Maiden Lane is a sidewalk, parallel with the tracks. Des Moines Street intersects the tracks at right angles, north of a railroad bridge carrying the main line Rock Island tracks across Maiden Lane, but does not continue west of Maiden Lane. On the north side of Des Moines Street, crossing the tracks, is a sidewalk, and there is a plank crossing at the street, about 12 feet wide. It was 75 feet from the south side of the sidewalk on the north side of Des Moines Street to the overhead bridge. The traveled part of Maiden Lane is on the west side of the tracks in question, and about seven feet west of the sidewalk on the west side of Maiden Lane is a large tree. On the day in question, the section foreman informed the crew that they could quit work for dinner, and decedent put his shovel and gloves under the tree, and then crossed the sidewalk on the west side of Maiden Lane and walked in a northeasterly direction, crossing the sidewalk on the north side of Des Moines Street, and continued walking in the same direction.

The train approached from the south, the engineer being seated on the east side of the locomotive, which extends about 30 or 35 feet ahead of the engineer's position in the cab. The engineer testified that his view was obstructed for a distance of 83 to 93 feet ahead of the cab, and the decedent was not seen by the engineer at any time as the train approached the place of the accident. Decedent was first observed by the fireman as the train was approaching the overhead bridge. It is shown that the distance from the tree where decedent placed his shovel and gloves to the west rail of the tracks is 28 feet east. The fireman testified that, when the train was about a half block south of the south side of the overhead bridge, "I saw a man walk from the sidewalk in a northeasterly direction toward the right of way." When the decedent was within 3 or 4 feet of the west rail, he hesitated, as if he intended to stop, and at that time the engine was about 10 to 15 feet from the place of the accident. As decedent started to cross the track, the fireman yelled to him to watch out, and called upon the engineer to stop. The emer-

gency brake was immediately applied, but too late to avoid striking Stanoshek. Decedent was struck at a point approximately 10 feet north of the sidewalk on the north side of Des Moines Street, and the train moved about 150 feet before it stopped; and at that time the body of the decedent was lying about the center of the rear coach. The train consisted of a locomotive, combination smoker, baggage car, and coach. The crossing bell was ringing as the train approached the place of the accident, but it appears that, by reason of some defect in the signal, it had been continuously ringing for some time prior to the accident. His section foreman called to Stanoshek to look out for the train, when he started over the sidewalk crossing, and at that time decedent had not reached the west rail of the tracks. The testimony shows he was about 4 or 5 feet from the track when the foreman warned him. There is conflict in the evidence as to the speed of the train, varying from 6 to 20 miles per hour. There is no proof in the record as to the distance at which the train could have been stopped, except that it is shown that the brakes were immediately applied when the fireman gave the engineer the warning, and the train traveled about 150 feet.

When the decedent was discovered by the fireman, he was in a place of safety. He was walking in a northeasterly direction, and there was nothing to indicate that he was about to go upon the railroad track until the train was almost upon him. Those in control of moving trains have a right to presume that another employee will not put himself in a place of danger and pay no attention to his own safety. The engine crew had a right to assume that the decedent would exercise reasonable care for his own safety, and that he would not heedlessly go in front of a moving train. *Bennett v. Atchison, T. & S. F. R. Co.,* 191 Iowa 1333. It is said in *Aerkfetz v. Humphreys,* 145 U. S. 418 (36 L. Ed. 758):

1. NEGLIGENCE: acts constituting: duty to use care: presumption *in re* avoiding danger.

"There could have been no thought or expectation on the part of the engineer, or of any other employee, that he, thus at work in a place of danger, would pay no attention to his own safety. Under such circumstances, what negligence can be attributed to the parties in control of the train * * * They were

not bound to assume that any employee, familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars.''

In the instant case it was decedent's own act that was the proximate cause of his injury, and there can be no recovery under the rule of the last clear chance. One of the essential elements of liability under this doctrine is that, after the perilous position of the decedent was in fact discovered, the injury could have been avoided by the exercise of ordinary care by the employees in charge of the train. Under the Federal Act, an employee assumes the risks of all injuries arising from conditions which are known to him, and the danger of which he appreciates, or which in the exercise of ordinary care he must appreciate. *Clemens v. Chicago, R. I. & P. R. Co.*, 163 Iowa 499; *Taylor v. Chicago, R. I. & P. R. Co.*, 186 Iowa 506. There is no proof of any dangerous or reckless rate of speed in the operation of the train in question, and, as stated, there was no duty upon the part of the employees operating the train to assume that deceased would recklessly step in front of the engine. He was warned of the approach of the train by his foreman before he was in fact within the zone of danger. He hesitated, and then continued across the track. It cannot be said that the fireman was guilty of any negligence toward the decedent in failing to call upon the engineer to stop sooner than he did. The line of direction which decedent was taking did not indicate any purpose on his part to cross the track. He walked across the sidewalk where ordinarily he would have crossed the track. We recognize that it is our duty to give plaintiff the most that can reasonably be claimed for his testimony and the inferences to be drawn therefrom. In *Trotter v. Chicago, R. I. & P. R. Co.*, 185 Iowa 1045, we said, in reviewing the evidence:

2. NEGLIGENCE: proximate cause: "last clear chance" doctrine.

''The utmost of it is that a man was seen walking ahead of an on-coming train, on a path beside the track, and where he was safe; that, when the train was practically up to him, he left the path and went upon the track, and did this without giving any indication that he intended leaving the path for the track. We are unable to find in this any evidence of a *wanton* failure to give warning. All that was seen during the time

when warning might have been effective was a trespasser in a safe place. It was not negligence in that situation to refrain from giving warning or to slow up the train.''

So in the case at bar, the decedent, one of the employees of the company, fully acquainted with the situation, went from a place of safety upon a track so suddenly that no diligence on the part of the train crew could save him. In *Landis v. Interurban R. Co.*, 166 Iowa 20, the motorman saw the plaintiff approaching the crossing, but also observed that the horses he was driving had slackened their pace. This led him to believe that plaintiff was going to stop his team. It is said:

''The motorman was not obliged to do anything until he saw the plaintiff in a position of peril. He had a right to assume that he would not drive heedlessly· on the track, and until, in the exercise of ordinary care, he was advised that plaintiff was heedless of his own safety, and was either in or about to get himself into a perilous situation, he was not obliged to act upon the theory that plaintiff would himself be negligent, and place himself in a position of peril.''

Nothing is disclosed in the record before us that any action on the part of the train crew could have prevented the accident. After the decedent was actually in a position of peril, the fireman testified that he thought the decedent would stop. He had a right to assume this. *Powers v. Iowa Cent. R. Co.*, 157 Iowa 347, 352; *Duggan v. Chicago, M. & St. P. R. Co.*, 179 Iowa 1072, 1076. Under the theory of the last clear chance, the last negligence after discovery of the perilous position of the defendant must be the proximate cause of the accident. Under the instant record, it is undisputed that the decedent was some four or five feet west of the west rail of the track when he was warned of the approach of the train by his section crew. Decedent was walking slowly. His hearing was good. The train at that time was 15 to 20 feet away. There was no diverting circumstance, and no emergency· presented itself. The only thing necessary was to check his forward progress and remain in a zone of safety. Plaintiff was not on the railroad track, but walking near it, and diagonally towards it. There was nothing at any time to prevent him from remaining inside the zone of safety. Furthermore, no evidence was introduced upon the part of plain-

tiff that would justify a finding that, after the decedent was observed in a position of peril, the train could have been stopped or the accident avoided; and this is another reason why the doctrine of last clear chance has no applicability to the facts in this case. See *Wilflin v. Des Moines City R. Co.*, 176 Iowa 642; *Southern R. Co. v. Gray*, 241 U. S. 333 (60 L. Ed. 1030).

We think the motion to direct a verdict for the defendant was properly sustained. The principle upon which the ruling is based is well established, and sustained under the principles of the common law, as interpreted and applied in the Federal Law. Decedent's act, and not the act of the defendant, was the proximate cause of the accident and his resulting death. There must be proof of some negligence on the part of the defendant aside from that of the employee, to justify a recovery under the Federal Act. *Great Northern R. Co. v. Wiles*, 240 U. S. 444 (60 L. Ed. 732); *Virginian R. Co. v. Linkous*, 230 Fed. 88; *Pheasant v. Director General of Railroads*, 285 Fed. 342; *Bennett v. Atchison, T. & S. F. R. Co.*, 191 Iowa 1333. Wherefore, the judgment entered by the district court is—*Affirmed.*

ARTHUR, C. J., STEVENS and VERMILION, JJ., concur.