RUBY HAMILTON, Administratrix, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellee.

No. 40468.

FEBRUARY 10, 1931.

*O. M. Slaymaker* and *R. E. Killmar,* for appellant.

*W. D. Eaton, J. C. Pryor,* and *L. E. Crist,* for appellee.

MORLING, J.—At the time in question, which was somewhat after 10 o'clock in the evening of August 6, 1928, decedent, in the performance of his duties, was, because of recent rains, inspecting defendant's tracks in his section. The  section extended east from Woodburn four miles. The road there was double-tracked. The south track was used for east-bound traffic. Decedent got a line-up on the trains, and started on his trip of inspection about 9:30 P.M. An east-bound fast mail, scheduled to pass Woodburn at 10:10, was reported on time. Decedent, with two section men, took a motor track car, and proceeded east from Woodburn on the south track.

Sectionman Page sat on the southeast corner of the motor car, facing southeast. Sectionman Fowler sat on the northeast corner, watching the track. Decedent sat right behind Fowler. The only other evidence as to decedent's position is that Fowler says, "I suppose [he was] looking at the track," and Page says, "I suppose, down the track, in the direction in which we were going." They had two white lanterns and one red lantern. A witness testifies that, while he was standing five or six rods north of the railroad at Woodburn, and the car was traveling east, the red light was visible for one-half mile. After rounding the curves, the sectionmen looked back for approaching trains. They and another witness listened for crossing signals. No crossing signals were heard. Near the east end of the section is a road crossing, and a half mile east of that is another crossing. As they were getting close to the westerly of these two crossings, Sectionman Page saw a headlight approaching from the west. There was also one approaching from the east (on the north track). Decedent was operating the car. Page reported the approach of the train from the west. Decedent told Fowler to flag. Fowler stepped off the motor car, and flagged twice with the red lantern. Fowler says:

"Then I had to get out of the way. * * * When I got off the track, I went down the bank; and it wasn't very long after I got off the track that the train passed. I couldn't say how quick. If I hadn't got out of the way, it would have hit me. I don't know just how far that motor car had traveled east from that point where I got off before it was hit,—four or five rails, I expect (two-rod rails). * * * I expect the motor car was going 20 to 25 miles an hour. * * * The speed of the motor car at the time I got off was about five miles an hour. * * * When I jumped off, I stood in the track there and gave two quick stop signals with my lantern, then jumped off the track, and almost instantly the train went by me. As to what Hamilton had done: the last time I saw him, he was standing up, facing the engine, standing up on the motor car, looking straight towards the engine. There was not a thing to have prevented his getting off when I got off. * * * He did nothing towards stopping the car when the alarm was given that the train was coming. I stopped it myself, and he was running the car; and then, after Page and I jumped off, he got up and stood up on the car, facing

the engine. * * * Neither Mr. Page nor I had any difficulty in getting off the motor car."

Mr. Page testifies:

"Mr. Hamilton told Mr. Fowler to flag. Mr. Fowler slowed the motor down, and got off shortly afterwards. * * * I stayed on the motor just a few seconds. * * * After I got off, I stepped from the south side to the north side of the track, and following that, the train came along just right now. As to whether I saw the train hit Mr. Hamilton, just about the time I think I seen him hit; at that time, I was on the north side of the south track. * * * After I saw this train, Mr. Hamilton didn't do anything about shutting off this motor that I know of, when I gave the alarm about the train coming. I know, as matter of fact, that Mr. Fowler shut that off, and Mr. Fowler jumped off. I jumped off, not right at that time, within a second or two afterwards; and at that time, I judge it was going about five miles an hour. The last time I saw Mr. Hamilton, he was standing up, at the time I got off, and he was looking straight west, in the direction of that train, headed that way; and I called to him to jump. There was nothing to prevent him getting off when I got off, that I know of. * * * As to how long I saw him standing up there, it all happened about the same time. He was hit about the time I looked. I did not see him standing there before that time at all."

The train that struck decedent was the fast mail that has been referred to. A witness testified that he saw the train when it was passing about a quarter of a mile east of Woodburn, and it was then 10:05 (indicating, as plaintiff claims, that the train was five minutes ahead of time). There is testimony that the roadmaster, two or three weeks before the accident, told decedent to use the motor car in question, which was a lineman's car, "and be careful and not let it get hit, and if he saw a train coming, for him to get a man to flag, and him run the car out of danger. * * * On account of, afraid it would wreck the train." The tracks from the place of the accident west were straight for about 180 rods. An object on the track the size of a man could have been seen 1,100 feet ahead of the engine. The scheduled speed of the train was 39.2 miles an hour. The train could have been stopped in 30 rods. There was no place in the one-half mile

between the two road crossings which have been mentioned at which the motor car could have been taken off the track. By Rule 67: "When running over tracks in a hand or motor car, at least one man must face towards the rear, to look for trains."

.The defendant may rightfully challenge the accuracy of the foregoing recital. Thereby the interpretation of the evidence and of plaintiff's rejected offers of evidence most favorable to plaintiff is set out.

I. Plaintiff claims her cause of action under the law of the Federal jurisdiction. By that law the burden was upon plaintiff to prove that defendant was negligent, and that defendant's negligence was the proximate cause of the accident. It was not sufficient for plaintiff to show that the defendant might have been guilty of negligence. If the evidence left the claim of negligence uncertain or conjectural, plaintff was not entitled to recover. The ordinary risks of the employment were assumed by decedent. *New York Cent. R. Co. v. Ambrose,* 280 U. S. 486 (74 L. Ed. 562) ; *Bennett v. Atchison, T. & S. F. R. Co.,* 191 Iowa 1333. Assumption of risk was pleaded as a defense, and was established by the evidence offered in behalf of plaintiff. Defendant owed no duty to decedent to keep a lookout. Decedent assumed risk of danger from passing trains. *Chesapeake & O. R. Co. v. Nixon,* 271 U. S. 218 (70 L. Ed. 914). Crossing signals are required for the benefit of the public, especially those using the highway,—not to modify the relationship between railroad companies and their employees, or to prescribe or vary the employees' assumed duties. The decedent was an employee of the company, whose duties were to be performed upon its tracks, and who, by the rule of the company and the Federal law, was required to keep a lookout for trains. If decedent had performed his duties, he would not have been exposed to injury from the failure to give crossing signals. The company owed no duty to him to give crossing signals. *Id.*; *Chesapeake & O. R. Co. v. Mihas,* 280 U. S. 102 (74 L. Ed. 207, 211) ; *Norfolk & W. R. Co. v. Kratzer,* 37 Fed. (2d Ser.) 522.

Plaintiff contends that the engineer could and should have seen the motor car in time to have prevented the accident by stopping the train. It cannot be assumed, without proof, that

 the enginemen on the fast mail actually saw decedent .or the motor car in time .to have stopped the train and to have avoided the collision, or that, reckless of their own safety. and of the safety of others on the train, and murderously disregardful of consequences to the sectionmen, they failed to stop. Before the doctrine of last clear chance may be applied, it must be shown that the enginemen actually saw the sectionmen, or knew of their peril, in time, and with opportunity, to have avoided the accident. *Stanoshek v. Chicago, R. I. & P. R. Co.*, 198 Iowa 62; *Graves v. Chicago, R. I. & P. R. Co.*, 207 Iowa 30; *Bennett v. Atchison, T. & S. F. R. Co.*, 191 Iowa 1333.

When decedent started, and while he was proceeding, on his trip from Woodburn, it was his duty to have one man face towards the rear and look for trains. This duty was not re-  stricted by schedules or to regular trains. There was no exception to it, of trains reported on time or not immediately expected. The company was not required to so frame its schedules, or to observe them, or to limit its trains to schedule, as to protect thereby trackmen, or to impose upon the trainmen affirmative duties to the trackmen. The company had the right to impose upon the trackmen themselves the duty. of looking out for their own safety, and of exempting the trainmen from that duty. Decedent was in charge of the motor car. From the beginning of the trip to the. time that the alarm of the approach of the train was given, he ignored Rule 67, under which he was working. He knew that it was about time for the fast mail. He was familiar with the track, and knew at what places the motor car might be readily removed from the track. The roadmaster *ex officio* cannot be presumed.to have had power to authorize a violation of, or to create an exception to, the rule, or to exempt decedent from performance of the duties which he assumed by his contract of employment and by the company's rules governing employees and the operation of trains. It is not reasonable to.interpret the evidence as indicating an intention on the part of the roadmaster to excuse decedent from performance of duties imposed upon him by the rules of the company, or as conveying to decedent an understanding that he was excused.

Rather, the reasonable interpretation is that care not to have the motor car struck was enjoined, but, if decedent should see a train coming, he should flag, rather than permit the motor car or the train to be endangered. The sectionmen owed a duty of not, by their negligence, imperiling the train. It may not be assumed that the roadmaster intended, or that decedent understood, that decedent was permitted to omit keeping a lookout, or to be otherwise negligent, and escape the consequences by flagging the train. Decedent knew that, soon, at least, the fast mail would pass. He knew that it was his duty to get the motor car, as well as the crew, out of the way in time to let the train pass. He neglected that duty.

Rapid speed in the open country is not an independent ground of negligence. *Graves v. Chicago, R. I. & P. R. Co.,* 207 Iowa 30. The company owed the trackmen no duty to retard  its trains to schedule speed, or to refrain from running in advance of scheduled time, even though it might be said that scheduled time has any relation to operation between stations, or that the testimony is sufficient to show that the train in this case was ahead of time. It was the duty of decedent, not only to watch for the fast mail, but to so anticipate its approach that he would have the motor car off the track.

Though the company was chargeable with knowledge that the sectionmen were patrolling the track, neither the company nor the enginemen were required to assume that the sectionmen were violating the rules or their duties, were not keeping the prescribed lookout, or that they had negligently got themselves into such position that they could not remove the motor car from the track and avoid collision.

The two sectionmen readily got off the motor car. One of them called to decedent to jump. Decedent might have got off as readily as they. The evidence wholly fails to show that decedent could have had any expectation that by remaining on the car he could save either the car or himself.

Plaintiff urges that Fowler was negligent in slowing the car. But in consequence of decedent's negligence, an emergency confronted the three men. Decedent ordered Fowler to flag the train. Fowler was sitting in front of decedent. He and Page got off. There is no showing that they were not required to get

off, to obey the order, or that they were negligent in slowing down the car, to enable them to do so, or that the slowing down was the proximate cause of the accident.

It results that there are three obstacles to plaintiff's recovery: 1. There is no sufficient evidence of negligence on the part of the defendant proximately causing the accident.. 2. It appears without conflict that the accident resulted from a risk assumed by decedent. 3. It is proved that the proximate (not merely a contributing) cause of the accident was decedent's own negligence.—*Affirmed.*

FAVILLE, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.