Hillsborough,
Sept. 4, 1934.

ELIZABETH SWEENEY, *Adm'x*

*v.*

BOSTON & MAINE RAILROAD.

92

*Laurence I. Duncan* and *Robert W. Upton* (*Mr. Duncan* orally), for the plaintiff.

*Warren, Wilson, McLaughlin & Bingham* (*Mr. Bingham* orally), for the defendant.

WOODBURY, J. I. The defendant operates a connecting railroad system extending into several states and the Keene branch of this system upon which the accident occurred is in daily use for the passage of cars between Keene, N. H. and Boston, Mass. The deceased at the time of his death was engaged in the work of maintaining the road bed of this Keene branch. It is now well established that an employee engaged in the work of maintaining or repairing tracks used

in whole or in part for interstate commerce is entitled to the benefits of the federal employers' liability act. *Rockwell* v. *Hustis,* 79 N. H. 57; *Crugley* v. *Railway,* 79 N. H. 276; *McLean* v. *Railroad,* 80 N. H. 252; *Paradis* v. *Railroad,* 81 N. H. 210; *Pedersen* v. *Railroad,* 229 U. S. 146. It is equally well established that the federal act does not supplement state law, but supersedes it; that in cases where the federal law applies, the state law does not. *Shannon* v. *Railroad,* 77 N. H. 349; *Hyland* v. *Hines,* 80 N. H. 179, 183; *Wabash Railroad Co.* v. *Hayes,* 234 U. S. 86. The court properly ordered a nonsuit on the count based upon state law.

II. The federal act (U. S. Code Ann., Tit. 45, c. 2), makes a carrier engaged in interstate commerce liable in damages to those of its employees injured or killed while employed by it in such commerce when injury or death results to them "in whole or in part from the negligence of any of the officers, agents, or employees" of the carrier. By its terms the act does not make the carrier an insurer of the safety of its employees, nor does it do away with the defence of the assumption of the risk, except in so far as it abrogates the fellow-servant rule. *Tondreau* v. *Railroad,* 85 N. H. 235.

The plaintiff bases her right to recover on three alleged acts of negligence on the part of fellow-servants of the deceased, that is, of the engineer and fireman of the work train. These acts consist of: 1. Failure to keep a lookout; 2. Failure to sound a warning as the locomotive entered the curve where the accident happened, and 3. Failure to keep the speed of the train under control.

"Negligence is not a thing, but a relation." *Boston & Maine Railroad* v. *Sargent,* 72 N. H. 455, 463. "Legal negligence is the failure to perform a duty the law imposes upon one person for the benefit of another; consequently, when there is no duty there can be no negligence." *Davis* v. *Railroad,* 70 N. H. 519, 520. See also *Hughes* v. *Railroad,* 71 N. H. 279, 284; *Garland* v. *Railroad,* 76 N. H. 556; *Brody* v. *Gilbert,* 82 N. H. 158. The nature and extent of the duty which the defendant, acting through its engineer and fireman, owed to the deceased must be determined by reference to federal legislation and the opinions of the federal courts. *Southern Railway* v. *Gray,* 241 U. S. 333; *Tondreau* v. *Railroad, supra.*

In *Chesapeake & Ohio Railway Co.* v. *Nixon,* 271 U. S. 218, the deceased, an experienced section foreman, was struck from behind and killed by a locomotive. The accident occurred during daylight, while the deceased was operating a foot propelled tricycle over the appellant's rails. "For reasons that the jury found insufficient

to excuse the omission the engineer and fireman of the train were not on the lookout." Under the above circumstances the deceased was held to have assumed the risk, to have understood that he must rely upon his own watchfulness and keep out of the way, and that "the railroad company was entitled to expect that self-protection from its employees." A judgment for the appellee in the supreme court of appeals of Virginia was reversed by the United States supreme court.

Seven years later in the case of *Rocco* v. *Railroad,* 288 U. S. 275, the supreme court of the United States was again called upon to consider the same question but the circumstances of the later case were quite different from those of the former. In the *Rocco* case the deceased set out upon an inspection trip over his section without first inquiring about train movements as his instructions required. He was killed in a head-on collision with an electric locomotive on a curve where the view was obstructed. It was storming at the time and there had been frequent washouts on the line. He was making a regular inspection and the train with which he collided was three hours late. The motorman of the locomotive knew that the deceased was likely to be on or near the curve at the time of the accident and that it was a blind curve, yet he entered it without having the speed of his train under control and without giving warning of his approach, although it was customary to sound a warning when nearing the curve. The court, after reciting the foregoing facts, used the following language: "We think these facts required that the jury should determine whether the motorman exercised reasonable care to have his train under control, to sound a warning before entering the curve, and to be on the lookout for workmen whose presence might be expected on the day in question, when the waters of the lake were washing over the tracks at this point and inspection and repair might be required. Under the authorities cited the decedent assumed the risks ordinarily incident to his employment as a track inspector, but in the circumstances shown we do not think they included a failure on the part of the motorman to keep a lookout and to give warning in places where the view of one who might be expected to be on the track or approaching in the opposite direction was shut off and the probability of accident was therefore much greater than where the track is straight and the view unobstructed. The issues of negligence of the motorman and contributory negligence of the decedent were for the jury." It was also held that the decedent's failure to inform himself of train movements, although a concurrent cause, was not "in any proper sense" the primary cause of the accident.

The plaintiff in the case at bar argues that in the *Rocco* case the court in effect overruled its former opinion in the *Nixon* case. This argument is invalid. The circumstances of the two cases are substantially different. The duty on the part of the engine crew to use care for the protection of sectionmen is predicated in the *Rocco* case upon the fact that the motorman should have anticipated the sectionman's presence in a place where he could not take precautions for his own safety. In the *Nixon* case no duty of care rested upon the engine crew because they did not in fact know of the sectionman's presence nor should they have anticipated his presence at or near the place where the accident occurred; and furthermore the accident occurred at a place on the track where the sectionman could have seen the locomotive and avoided it, as his duty required, and upon such saving action on his part the engine crew were entitled to rely. Broadly stated, it is the track worker's duty to avoid approaching trains, extras as well as those on a scheduled run, and there is no duty on the part of members of an engine crew to use care for their safety. But a duty of care does arise when the engine crew actually knows of the presence of sectionmen and also that they are either unaware of or unable to escape from a dangerous position. The duty of care also arises when the engine crew has reason to anticipate track workers in a place where the surrounding circumstances are such that they are unable to take precautions for their own safety. Such is the rule which obtains generally in the state courts. *Davis* v. *Railway*, 276 Fed. Rep. 187; *Hamilton* v. *Railroad*, 211 Iowa 924; *Voorhees* v. *Railroad*, 325 Mo. 835; *Louisville &c. Railroad* v. *Parker*, 223 Ala. 626; *Kalashian* v. *Hines*, 171 Wis. 429; *Smith* v. *Railroad*, 227 App. Div. 269.

There is nothing in the instant case to bring it within the rule of the *Rocco* case. The accident did not occur on a "blind curve," but at a place where the deceased could have seen the oncoming locomotive in ample time to escape injury, nor is there anything to indicate that the engine crew did or ought to have seen or anticipated the decedent's presence on the curve. Under these circumstances the engine crew owed no duty of care toward the deceased and consequently cannot be found negligent for failure to take precautions for his safety. The case at bar is in all material respects similar to the case of *Bernola* v. *Railroad*, 68 Fed. Rep. (2d) 172, in which case the circuit court of appeals for the third circuit, after carefully drawing the line of distinction between the *Rocco* and *Nixon* cases, sustained a directed verdict for the defendant.

The court was not in error in granting the defendant's motion for a nonsuit on the count under federal law.

*Judgment for the defendant.*

All concurred.

ON MOTION FOR REHEARING. After the foregoing opinion was filed, the plaintiff moved for a rehearing.

*Laurence I. Duncan* and *Robert W. Upton* (by brief), for the motion.

*Warren, Wilson, McLaughlin & Bingham,* opposed.

WOODBURY, J. In support of her motion the plaintiff argues that, "the evidence establishes that the negligence of the members of the section crew assigned to keep a lookout was a cause of the death of the plaintiff's intestate."

The authorities cited in the foregoing opinion establish the general rule that it is the duty of each trackworker to watch out for his own safety and that there is not, ordinarily, any duty on the part of one member of a section crew to warn his fellows of the approach of danger. However, it has been established that a railroad company may be found liable for the negligent failure of one member of a section crew to warn his fellows when the person injured has reasonably intrusted his safety to the watchfulness of others, and, acting in reliance upon someone else's care, has maintained no lookout for himself. *Swank* v. *Railroad,* 94 N. J. L. 546 (*certiorari* denied, 254 U. S. 638); *St. Louis-San Francisco Ry Co.* v. *Fine,* 184 Ark. 940, (*certiorari* denied, 286 U. S. 552). In the case at bar there is nothing to indicate that the deceased relied upon the lookout of others and therefore failed to maintain a lookout for himself.

The record discloses that the two members of the section crew who sat on the forward end of the seats, which run lengthwise of the car, were looking forward watching for defects in the rails and for any traffic which might be on the tracks ahead of them. One member of the crew who sat on the rear of the seat on the right hand side of the car was on watch to the rear. The deceased, as foreman, was operating the car and the only evidence bearing upon the matter indicates that he was looking forward in the direction in which the

car was proceeding. The evidence falls far short of establishing that the nature of his duties as operator of the car, or that the construction of the car itself, or the fact that one member of the crew was seated in front of him rendered it impossible for him to see in the direction in which the car was going. Although it might be found that he had intrusted his safety as to traffic approaching from the rear to the watchfulness of the man on lookout in that direction, there is no evidence that he had intrusted his safety to others as to traffic approaching from in front. In fact the evidence is that he was one of those on lookout ahead and that the other members of the crew were, to some extent at least, relying upon his watchfulness in that direction.

Furthermore, it does not appear that failure to give earlier warning of the approach of the locomotive was the cause of the intestate's death. The warning was given in season to allow all the members of the crew to jump to safety, one of whom disengaged the clutch before he jumped. The deceased applied the brakes and remained thereafter on the car until the impact. After applying the brakes nothing remained for him to do on the car in order to save railroad property or for any other purpose. His failure to jump when the others did was the cause of his death. *Hamilton* v. *Railroad*, 211 Iowa 924.

The second ground advanced in support of the plaintiff's motion is that "the evidence establishes that defendant's negligence in failing to warn of the work extra was a cause of the death of the plaintiff's intestate."

There is no duty on the part of a railroad company to warn its section employees of the movement of extra trains. *Shepard* v. *Railroad*, 158 Mass. 174; *Jacobson* v. *Railroad*, 66 Fed. Rep. (2d) 688. Here, however, there is evidence that the defendant had adopted the practice or custom of providing its section foreman with the means of obtaining information regarding extra train movements. It is doubtless true that the defendant could be found negligent should it abandon this practice without excuse or without giving warning to those of its employees who acted in reliance thereon, but it does not appear that this practice was departed from on the day of the accident. The "line up" or order of extra train movements was telegraphed as usual to the ticket office of the Nashua union station. As usual that office was busy between six and seven o'clock on the morning of the accident and, under these circumstances, telephone calls might not be answered immediately. It does not appear that if the

deceased had persisted in his efforts to reach the office by telephone he would not have succeeded, or that this difficulty in communication was any greater on the morning of the accident than on any other morning. The customary information was available to the deceased in the customary manner on the morning of his death.

Although there is evidence that copies of extra train orders were sometimes left at the Nashua city station or at the tool house where the motor car was kept, it does not appear that this practice was carried out with sufficient regularity to permit the inference that this was a customary method of supplying the deceased with information, or to warrant him, in the absence of orders, in assuming that no extra trains were to be run.

The third ground advanced in favor of the motion relates to the conduct of the engine crew of the work extra. Under this ground the plaintiff claims that the engine crew were negligent in three particulars: "(1) in failing to keep a lookout; (2) in failing to sound a warning as the train passed around the curve on which the accident occurred; and (3) in operating the train at an excessive speed." The case of *Chesapeake & Ohio Railway Co.* v. *Nixon*, 271 U. S. 218, mentioned in the original opinion disposes of the first claim of negligence.

In support of the second claim of negligence our attention is directed to testimony which indicates that a rule of the railroad required that one long blast of the whistle be sounded as extra trains "rounded the curve," and that the last whistle before the accident was sounded on the locomotive of the work extra as it was on the crossing of the Amherst road, a point 1065 feet from the place where the accident occurred. Although it appears that at no point on the curve was there a clear view of less than 800 feet, it does not appear exactly how long the curve was from one end to the other. However, both the oral testimony of the plaintiff's surveyor and his plan which was introduced in evidence clearly indicate that the curve extended down to, and some distance, at least, beyond the crossing. This evidence places the point where the last whistle was sounded definitely within the arc of the curve and shows that the whistle was sounded as required by the rule.

In support of the third claim of negligence counsel for the plaintiff draw attention to testimony from which it might have been found that the work extra was proceeding at forty miles per hour when a rule of the railroad limited the speed of such trains to twenty-five miles per hour. Breach of this rule is not available to the plaintiff as a ground of complaint. The evidence establishes that the rule

did not apply to all extra trains but only to those containing a car upon which a derrick was mounted and that the purpose of the rule was to protect railroad property since at speeds in excess of twenty-five miles per hour the derrick boom was likely to swing and break loose from its fastenings. The purpose of the rule not being to protect sectionmen its breach is not available to the plaintiff as a ground of negligence. *Derosier* v. *Company,* 81 N. H. 451, 456, 457.

*Former result affirmed.*

All concurred.