## SOUTHERN RAILWAY COMPANY *v.* GRAY, ADMINISTRATRIX OF GRAY.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 355.   Argued May 5, 1916.—Decided May 22, 1916.

Contradictory statements made by a witness prior to his examination in the case can have no legal tendency to establish the truth of their subject-matter.

Rights and obligations under the Federal Employers' Liability Act depend upon that Act and applicable principles of common law as interpreted and applied in Federal courts.

In an action under the Federal Employers' Liability Act, negligence by the employer is essential to a recovery, and where there is no evidence to show why a brakeman, sent to guard his train, should lie down and go to sleep on the track within a short distance of a curve, negligence cannot be imputed to the engineer of an approaching passenger train for not stopping his train before striking him, it appearing that the distance from the curve was less than that in which a train could be stopped even if a light could have been seen.

The engineer of an approaching train, on seeing the lights of a brakeman sent out to guard the latter's train, has a right to presume

that the brakeman is standing on guard and he does not owe such brakeman a duty to immediately stop his train so as to avoid hitting him.

167 Nor. Car. 433, reversed.

THE facts, which involve the validity of a verdict and judgment in an action under the Employers' Liability Act, are stated in the opinion.

*Mr. L. E. Jeffries*, with whom *Mr. H. O'B. Cooper* and *Mr. L. L. Oliver* were on the brief, for plaintiff in error.

*Mr. Thomas H. Calvert*, with whom *Mr. John A. Barringer* was on the brief, for defendant in error.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Kenneth L. Gray, an experienced brakeman, was of the crew in charge of plaintiff in error's north-bound interstate freight train which started from Spencer at 9:45 P. M. August 29, 1912. Seeking damages for his death, the administratrix brought this suit under the Federal Employers' Liability Act (c. 149, 35 Stat. 65; c. 143, 36 Stat. 291) in the Superior Court, Randolph County, N. C. Among other things her amended complaint alleges:

"5. That on the 30th day of August, 1912, the intestate of the plaintiff was on a freight train running from Spencer in the State of North Carolina to Washington, D. C., through the State of Virginia, and when the freight train upon which the intestate of the plaintiff was operating in going north arrived at Dry Fork, in the State of Virginia, the intestate of the plaintiff was sent forward about three-quarters of a mile to signal a passenger train of defendant coming south; that the intestate of the plaintiff when he had gotten about three-quarters of a mile from Dry Fork, for some reason—loss of sleep or for some other

cause unknown to the plaintiff—laid down by the side of the track of the defendant with his head on the end of the cross-ties and went to sleep; that shortly thereafter passenger train No. 37, coming south as aforesaid, carelessly and negligently ran over the intestate  .  .  .

   \*      \*      \*      \*      \*      \*      \*      \*

"7. That the death of the intestate of the plaintiff was caused without fault on his part and by the wrongful and negligent act of the defendant, in that both the engineer and the fireman upon the passenger train which killed the intestate of the plaintiff could have easily seen the intestate of the plaintiff lying in a helpless condition as aforesaid upon the track of the defendant, the track of the defendant being straight a sufficient distance upon which the said passenger train was running toward the intestate of the plaintiff to have stopped the train or slackened its speed sufficiently to have prevented the killing of the intestate of the plaintiff, ran their train onto the intestate of the plaintiff without ringing the bell, without blowing its whistle, without slackening its speed or without stopping the said train; in that the servants of the defendant did not keep proper lookout on the track in front of the engine and have the engine and train of the defendant in proper control so that they could stop the engine of the defendant in time to have prevented the wrongful killing of the intestate of the plaintiff; in that the servants of the defendant did not see the intestate of the plaintiff, which it was their duty to do and which they could have done by ordinary care until the train was so near the prostrate form of the intestate of the plaintiff that the servants of the defendant could not stop the train in time to save the life of the intestate of the plaintiff; in that the servants of the defendant wrongfully killed the intestate of the plaintiff upon the said occasion when they had the last clear chance to save his life, which they failed to do by the exercise of ordinary care."

The accident occurred at 5:14 A. M.—twenty minutes before sunrise—when it was somewhat foggy and ordinary objects on the ground could not readily be seen without artificial light. Approaching Dry Fork station the freight train stalled and having been divided into two sections these were hauled onto sidings there. After placing section one and as he returned by the main track to bring up section two, the freight engineer directed Gray to flag south-bound passenger train No. 37. It was the latter's duty, with a red and white lantern in hand, to go forward eighteen telegraph poles (half a mile) and lay a torpedo on the track; then to go nine poles further and place two torpedoes; then to return, stand near pole eighteen and await the expected train. No torpedo was put in place; but having advanced some three-quarters of a mile he set the lanterns on the track, lay down with his head on a crosstie and went to sleep. There is nothing to explain this action.

From Banister Hill two and one-fourth miles southward and almost to Dry Fork the track, following several curves, descends on a heavy grade. Commencing say three-fourths of a mile down this grade it runs in a straight line one-eighth mile; then around a sharp curve to the right, passing through a deep cut, to a point some six hundred feet from where the brakeman lay; then again in a straight line some four hundred feet; and thence around a moderate curve to the left perhaps a half mile.

On the west side of this last curve approximately 217 feet from its north end is the spot where Gray slept. Coming south along the track in broad daylight one can first see it when he reaches a point on the right-hand curve in the deep cut 1254 feet away.

Passenger train No. 37, properly equipped, 790 feet long, composed of ten cars—six steel sleepers and four other cars—a tender and engine, came down the long grade running fifty-five miles an hour. The engineer says

that approaching the right-hand curve he blew a station signal; when he reached point in the cut where it first became possible to see the lights he blew a flagman's signal; almost immediately thereafter, seeing the body, he put on brakes, turned off steam and did everything possible to check the train; before this could be done, a low step struck the brakeman's head. Just before No. 37 blew for that station (it was not scheduled to stop there) the freight engine, standing at Dry Fork, signaled for Gray's return.

Three engineers testified that in the circumstances the passenger train could not have been stopped in less than 1900 feet, and no other evidence was offered on this point. There is nothing indicating that after the engineer saw or could have seen the brakeman's body the train could have been stopped before reaching it.

In an effort to discredit the passenger engineer, only witness to some circumstances, he was asked on cross-examination concerning prior contradictory statements; but the exclusion of all or any part of his evidence would not change the result. Of course the contradictory statements can have no legal tendency to establish the truth of their subject-matter. *Donaldson* v. *N. Y., N. H. & H. R. R.*, 188 Massachusetts, 484, 486; *McDonald* v. *N. Y. C. &c. R. R.*, 186 Massachusetts, 474; *Commonwealth* v. *Starkweather*, 10 Cush. 59; *Sloan* v. *R. R.*, 45 N. Y. 125; *Purdy* v. *People*, 140 Illinois, 46.

Following local practice, at close of all the evidence a motion was made to dismiss as of non-suit, because negligence by the railroad had not been shown. The court denied this and submitted two issues to the jury— "whether the intestate of the plaintiff was killed by the negligence of the defendant, as alleged in the complaint" and "what damage, if any, is the plaintiff entitled to recover." In connection with these a lengthy and rather involved charge was given, the objections to which it is not now necessary for us to consider. Judgment upon a

verdict for the administratrix was affirmed.by the Supreme Court. 167 N. Car. 433.

Plaintiff in error maintains that the trial court erred in overruling its motion to dismiss and also relies upon objections to the charge. Counsel for defendant in error claim all instructions were correct and insist that the verdict is adequately supported by evidence. Concerning the latter they say:

"On the testimony and the law applicable to the case the jury could have arrived at the following conclusions:

"1. That there was an unobstructed view of more than 1,200 feet from the danger signals and the place the intestate was struck.

"2. That the red and white lights were on the track. This was undisputed.

"3. That it was the duty of the engineer to keep a lookout for danger signals. . . .

"4. That the fact the train approached about 1,300 feet distant around a curve did not excuse the engineer from keeping a lookout down the track.

"5. That the lights on the track could in fact be more easily seen when they were in the darkness and out of the direct rays of the headlight as the train was entering the straight track from the curve.

"6. That in the exercise of ordinary care the engineer could have seen the lights at a point more than 1,200 feet distant. . . .

"7. That the engineer should have blown his signal as soon as he saw the danger signals, or by the exercise of ordinary care could have seen them, which was when he was more than 1,200 feet distant.

"8. That instead of bringing his train under control and trying to stop it as soon as he saw, or by the exercise of ordinary care could have seen, the lights the engineer waited until he saw the intestate lying beside the track."

As the action is under the Federal Employers' Liability

Act, rights and obligations depend upon it and applicable principles of common law as interpreted and applied in Federal courts. *Seaboard Air Line* v. *Horton,* 233 U. S. 492; *Central Vermont Ry.* v. *White,* 238 U. S. 507; *Great Northern Ry.* v. *Wiles,* 240 U. S. 444.

Negligence by the railway company is essential to a recovery; and there is not a scintilla of evidence to show this under the most favorable view of the testimony urged by counsel for defendant in error. When it first became possible for the engineer to see signal lights 1254 feet away he had a right to suppose the brakeman was standing there on guard. Immediately, he says, the customary signal was sounded. No duty to the brakeman demanded an instant effort to stop the train—the indicated danger was more than half a mile away. Moreover, application of emergency apparatus on that moment, it appears, would not have caused a stop in time to prevent the accident. There is no evidence that the engineer could have seen the brakeman a single moment before he did or omitted thereafter to do all within his power.

We think the motion to dismiss should have been granted. The judgment below is accordingly reversed and the cause remanded to the Supreme Court of North Carolina for further proceedings not inconsistent with this opinion.

*Reversed.*