## UNITED STATES v. BIENER.

### No. 10782.

District Court, E. D. Pennsylvania.

Sept. 30, 1943.

Gerald A. Gleeson, U. S. Atty., and Charles P. Mirarchi, Asst. U. S. Atty., both of Philadelphia, Pa., for plaintiff.

Samuel Rose, of Philadelphia, Pa., for defendant.

BARD, District Judge.

Defendant was indicted and found guilty by a jury of transporting a woman one Kathryn Marra, from Chicago to Philadelphia for immoral purposes and with the intent to induce and compel her to engage in prostitution.

The Government called the woman as a witness for the Government. She testified that she is a married woman, and in March, 1942, while living in Chicago, she called the defendant by telephone and asked him to procure or borrow sufficient money to pay for her transportation to Philadelphia; that as a result transportation was furnished her; that she left Chicago by plane for Philadelphia, but the plane was forced down at Columbus, Ohio, and thereafter she proceeded by train to Philadelphia; that upon her arrival in Philadelphia, she was met by the defendant and another couple; that she and the defendant went to a hotel where they registered as husband and wife, but she lived there alone and

remained there for a month; that she then moved to an apartment, selected by the defendant, where she lived alone for two months, the lease for the latter place having been signed by the defendant and the woman as "Mr. and Mrs. Edward Biener"; and then, under the same arrangement, moved to another apartment and remained for less than a month.

The woman, although called as a government witness, testified that during the entire time of her residence in Philadelphia she lived alone and did not engage in prostitution. She testified that her husband, who lived in the West, sent her a weekly allowance by which she was able to support herself. She also testified that after one Frank Wollferth and the defendant had informed her that Wollferth had originally furnished the transportation money, she repaid the money to Wollferth.

The prosecuting attorney then informed the court that this testimony was at variance with a written statement that she had previously furnished to the agents of the Federal Bureau of Investigation. Over the defendant's objection, she was shown the statement which she admitted she had signed. In the written statement she stated she had engaged in prostitution and had turned the money over to the defendant, who had obtained the various rooming places for her.

At the trial she testified that when she signed this statement she had been taking narcotics by reason of illness and pain; that the statement had been prepared by one of the government agents; that she had informed the agents she had an appointment with her physician to obtain narcotics and that it was fifteen minutes past the time of her appointment; that she explained to the agents that she was signing it so that she could get away and keep her appointment, and that the agents drove her to her physician's office a few minutes after the statement was signed. She testified that her oral testimony presented at the trial was true and that anything in the written statement, inconsistent with her testimony at the trial, did not represent the true facts. She also testified that she had written a letter to the United States Attorney several months before the trial, wherein she informed him that the written statement obtained from her was not correct and that she would not testify to the alleged facts in the written statement because they were not true. Subsequently,

when she was confined in a hospital for illness, she was visited by one of the Federal Bureau of Investigation agents who had taken the statement, and she again told him at that time that she would not testify to the alleged facts appearing in the written statement because they were not true.

The government called one of the Federal Bureau of Investigation agents as a witness. He testified, over the defendant's objection, that he interviewed the woman in the Federal Bureau of Investigation offices; that she said she had tried to call the defendant by telephone from Chicago and had left her number; that pursuant to this, the day following, the defendant called her on the telephone; that they agreed that he would send her the money to come to Philadelphia to engage in prostitution, and that she did come to Philadelphia and did engage in this illegal practice. The Federal Bureau of Investigation agent said that she appeared to know what she was saying and what she was doing when she signed the statement containing these accusations. He testified that he did visit the woman in the hospital before the trial and she told the agent at that time that her written statement was not true. That, in substance, was the government's testimony.

Defendant's counsel moved for a directed verdict of not guilty. The court denied this motion. The defendant, himself, did not take the stand, but had several witnesses testify in his behalf.

In my charge I instructed the jury that the government's case was weak and that they should regard the testimony of the woman with great scrutiny and caution; but that if, despite such consideration, the jury believed that the facts as previously set forth in the woman's written statement were true, the jury could convict on the basis of such finding. The jury returned a verdict of guilty.

Motions were filed on behalf of the defendant for new trial and arrest of judgment.

■ I am constrained to think that it was error to deny the motion for a directed verdict at the time of trial and that the motion for arrest of judgment must be granted.

Without the facts contained in the written statement of the witness, repudiated by her prior to the trial and during the trial, the government has no evidence to sustain the verdict of guilt.

One who calls a witness and anticipates adverse testimony cannot plead surprise and treat him as adverse. The government attorney was not surprised by the testimony she gave at the trial. She had notified him before the trial what she would say. Defendant contends it was error to allow the witness to be cross-examined on her prior written statement because the written statement was hearsay as to the defendant.

This cross-examination concerning her former written statement was allowed not as affirmative proof of the guilt of the defendant, but only for the purpose of impeaching the credibility of the witness and of neutralizing the effect of the contradictory testimony given by her at the trial.

Without this prior contradictory statement, however, the government has no testimony to sustain the guilt of the defendant. Under the reported decisions, evidence of the prior contradictory statement can be used only to discredit the witness' present testimony and cannot be treated as affirmative proof of fact for any other purpose. Many of the cases say that even for this limited purpose it can be used to discredit such testimony only as may surprise the person offering it. Young v. United States, 5 Cir., 97 F.2d 200, 117 A.L.R. 316; Southern R. Co. v. Gray, 241 U.S. 333, 36 S.Ct. 558, 60 L.Ed. 1030; United States v. Graham, 2 Cir., 102 F.2d 436; Schonfeld v. United States, 2 Cir., 277 F. 934; Commonwealth v. Delfino, 259 Pa. 272, 277, 102 A. 949.

This rule of evidence has been criticised, and it seems to me very logically, by Circuit Judge Swan in United States ex rel. Ng Kee Wong v. Corsi, 2 Cir., 65 F.2d 564, 565, when he said: "That is an artificial doctrine. Practically, men will often believe that if a witness has earlier sworn to the opposite of what he now swears to, he was speaking the truth when he first testified." This was a naturalization case, however, in which the court reviewed the decision of an administrative board not bound by common-law rules of evidence.

Wigmore, in his monumental work on Evidence, Vol. III, § 1018(b), third edition, also criticises the orthodox view, and says: "It does not follow, however, that Prior Self-Contradictions, when admitted, are to be treated as having no affirmative testimonial value, and that any such credit is to be strictly denied them in the mind of the tribunal. The only ground for doing so would be the Hearsay rule. But the theory of the Hearsay rule is that an extrajudicial statement is rejected because it was made out of Court by an absent person not subject to cross-examination. Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the Hearsay rule has been already satisfied. Hence there is nothing to prevent the tribunal from giving such testimonial credit to the extrajudicial statement as it may seem to deserve. Psychologically of course, the one statement is as useful to consider as the other; and everyday experience outside of courtrooms is in accord." I think this is much the sounder reasoning, but I think in a criminal case I am bound by the established decisions.

The motion for arrest of judgment is granted. Motion for new trial is denied.