## HENWOOD v. CHANEY.
No. 13299.

Circuit Court of Appeals, Eighth Circuit.
July 12, 1946.

Writ of Certiorari Granted Oct. 21, 1946.
See 67 S.Ct. 113.

Wayne Ely, of St. Louis, Mo. (A. H. Kiskaddon, of St. Louis, Mo., on the brief), for appellant.

Donald T. Barbeau, of Minneapolis, Minn. (Robert J. McDonald and William H. DeParcq, both of Minneapolis, Minn., and Jerome F. Duggan and Carl M. Dubinsky, both of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal by Berryman Henwood, Trustee of the St. Louis Southwestern Railway Company, to review a judgment for $67,000 for plaintiff O. R. Chaney in an action brought under the Federal Employers' Liability Act, § 1, 45 U.S.C.A. § 51, and the Safety Appliance Act, § 2, 45 U.S.C.A. § 2, for injuries sustained by plaintiff who fell while he was attempting to pull a coupling pin during a switching operation, and was run over by one of the cars. Plaintiff charged defendant with negligence in failing to furnish a reasonably safe place in which to work and in using a car with defective coupling apparatus. The District Court withdrew from the jury the issue of defective equipment, and the case was submitted solely on the question whether plaintiff slipped on oil and mud which defendant negligently permitted to accumulate at the place of the accident; or whether, as contended by defendant, plaintiff's coat caught on some part of the railroad car, causing plaintiff to be thrown under it.

The appeal presents for review only the admission of evidence over defendant's objection. On the whole record that was made it could not seriously be contended that the evidence does not sustain the verdict and judgment or that the damages awarded were excessive.

Viewing the evidence in the light favorable to plaintiff, the pertinent facts surrounding the accident are these: Plaintiff, an experienced switchman, was acting as pin-puller on the morning of January 1, 1945. His duties included operation of a pin-lift lever which lifted the coupling pin and permitted cars to separate. Plaintiff was working on what was known as the inside lead track and it was often necessary for plaintiff to cross over tracks and switch ties to operate the coupling pin lever. Immediately preceding the accident, which occurred soon after plaintiff began his day's work, there was a movement of a string or "cut" of cars north up the lead track, and plaintiff on receiving a signal to cut off two cars from the string got on the cut between the second and third cars from the end and rode the cut until the movement came to a stop. He then alighted, and as the cars started moving back to the south, plaintiff pulled the pin. After the cars moved a few feet he heard the pin fall back into place and he ran after it to pull it again. In attempting to pull it the second time he ran alongside the car, shaking and pulling the lever. While running he crossed over one rail and was about to cross another when his foot slipped on some oil and slush causing him to fall. His right arm and right leg fell under the cut of cars and he was shoved along down the rail until he cleared himself.

According to plaintiff's evidence, oil was deposited on the lead track by engines leaking oil and by tank cars leaking as they were moved through the yards. On the day preceding the accident there had been a heavy rain and it was plaintiff's theory, supported by substantial evidence, that in rainy weather oil that had leaked on the lead track would wash to the side of the track,

creating a slippery condition where plaintiff and other employees engaged in switching operations were required to work. On various occasions complaints were made by defendant's employees concerning the slippery condition along the lead. Plaintiff testified that from the time he first worked there to the date of the accident the condition of the lead had remained practically the same, that for two years preceding the accident he had noticed oil along the lead from time to time, and that conditions had grown worse, that most of the oil came from Cotton Belt [St.L. S.W.] engines and that plaintiff had observed engines leaking and spilling oil within a month of the accident. No objection is made to admission of testimony of plaintiff.

Plaintiff offered testimony of a number of witnesses to prove the condition of the track in regard to oil and slush at the time of the accident and prior and subsequent thereto. Among them was R. A. Mayberry, a switchman, who testified that before the accident several engines were leaking oil to the extent that oil was scattered all up and down the lead, that in rainy weather a slippery condition existed, and that he, as "local committeeman or griever" for the Brotherhood of Railroad Trainmen, had complained of the conditions to the yardmaster. He also testified that at 1 o'clock P. M. on the day of the accident he visited the scene and found a pile of mud, dirt, oil and water. On re-direct examination Mayberry testified that when an engine was on the lead, leaking oil, and came to a stop and remained stationary for a while, oil leaked out between the rails in the spot where it had stopped. On re-cross examination he testified that he couldn't give a definite date when he saw an engine leak oil, and finally stated, "I never saw it standing and leak oil." Defendant moved to strike Mayberry's testimony in regard to engines leaking oil because of this statement on re-cross examination, and the District Court's refusal to grant the motion to strike is assigned as error. Assuming that the statement was diametrically opposed to the previous testimony of the witness, we are cited to no authority and find none to support the contention that the District Court erred in overruling the motion to strike. In United States v. Kiles, 8 Cir., 70 F.2d 880, 883, on which defendant relies, we held that there was no evidence to sustain a finding that a veteran suffered permanent disability before the lapse of a war risk policy, and in that connection we stated: "It cannot be said that this testimony given on cross-examination went only to the credibility of the witness or the weight to be given to his testimony. The testimony there given corrects, retracts, and entirely nullifies the testimony given on direct examination * * *."

In Southern Railway Co. v. Gray, 241 U.S. 333, 36 S.Ct. 558, 560, 60 L.Ed. 1030, the Supreme Court, in holding that a motion to dismiss as of non-suit for failure to show negligence of the railroad in an action brought under the Federal Employers' Liability Act should have been granted, said: "In an effort to discredit the passenger engineer, only witness to some circumstances, he was asked on cross-examination concerning prior contradictory statements; but the exclusion of all or any part of his evidence would not change the result. Of course, the contradictory statements can have no legal tendency to establish the truth of their subject-matter."

In the present case there was evidence other than that complained of, including testimony of some of defendant's own witnesses, from which the jury could find that there was oil and water along the lead and at the place plaintiff fell. We are not concerned with a situation such as confronted us in the Kiles case in which the only testimony on a material point was the inconsistent statements of a single witness. Counsel for defendant had the opportunity to argue to the jury the question of Mayberry's credibility and the record reveals that he did so. The jury was properly instructed on the question of credibility of witnesses and was informed that if it believed that any witness had wilfully sworn falsely to a material fact the jury might disregard the whole or any part of the witness' testimony. The denial of the motion to strike Mayberry's testimony was not error.

■ Defendant assigns as error the admission of testimony of plaintiff's witness W. T. Arnold that during 1943 and 1944 there was more oil between the rails of the lead track than there was in the latter part of 1942 when the witness went to work there, and that he saw an engine leaking oil on an occasion about two or three weeks before the accident. Defendant contends that such evidence was immaterial because it was too remote in time. In an action brought under the Federal Employers' Liability Act, rulings on admission of evidence are generally left to the sound discretion of the trial court. Lavender v. Kurn et al., 66 S.Ct. 740. As there was evidence that the accident was caused by plaintiff slipping on oil and water slush, admission of evidence concerning the oily condition of the lead track for a long period of time before the accident, was not error. Vicksburg & Meridian R. Co. v. Putnam, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257. This testimony had some probative force and it was at least within the discretion of the District Court to admit it. The testimony that Arnold saw an engine leaking oil between the rails of the lead track two or three weeks before the accident was admissible in support of plaintiff's theory that oil did accumulate on the lead track, even though it later developed that the particular oil was cleaned up before the accident. Furthermore, similar testimony of another witness was admitted without objection.

■ On cross examination of witness Mayberry defendant's counsel asked him why there wasn't then as much grease on the lead track as there was at the time of the accident, and the witness stated that there wasn't as much oil moving through the yards and that they were using some Diesel switch engines. Subsequently, in cross examination of plaintiff's witness Arnold, defendant's counsel proposed to exhibit to the jury a photograph of the right of way at the scene of the accident. It was offered for the purpose of illustration in connection with cross examination of Arnold concerning whether there had been any change in the condition of the walkway along the lead since the date of the accident. Plaintiff's counsel obtained permission to ask questions of the witness, before permitting the jury to see the photograph, and over defendant's objection the witness testified that since the accident engines leaking oil had been replaced by Diesel engines. Evidence of taking of additional precautions after an accident is not admissible to prove negligence at the time of the accident, Davidson S. S. Co. v. United States, 8 Cir. 142 F. 315, and admission of such testimony is generally held to be prejudicial. Columbia & Puget Sound R. Co. v. Hawthorne, 144 U.S. 202, 12 S.Ct. 591, 36 L.Ed. 405. But under the peculiar circumstances present defendant is in no position to complain of admission of this testimony. In the first place, the fact that Diesel engines had been placed in use was before the jury as a result of defendant's cross examination of Mayberry. In addition, the testimony was not admitted to show the taking of extra precautions but to establish that conditions were different at the time of the accident than they were at the time of the taking of the photograph which defendant proposed to exhibit to the jury. Admission of the testimony concerning Diesel engines for that purpose was not error. The only objection made to the testimony was that it was immaterial, and there was no request to limit the purpose for which the jury might consider it.

■ Defendant contends that the District Court erred in admitting evidence of four witnesses that they slipped and fell in the same railroad yard and near the point at which plaintiff's accident occurred. Over defendant's objection plaintiff's witness J. C. Stout, a switchman, testified that two or three weeks before the accident involved he slipped and fell as a result of slick mud and oil at a point near the scene of plaintiff's accident, and another switchman, W. J. Faircloth, testified that in February or March following plaintiff's accident he slipped and fell on oil and water at a point a short distance from the point at which plaintiff was injured. Defendant contends that the testimony of these switchmen was incompetent and that insufficient foundation was laid, in that the conditions

were not shown to be the same at the time they fell as they were at the time of the plaintiff's accident.

█ Evidence of prior or subsequent similiar accidents at or near the same place are admissible if they are not too remote in time, in order to show dangerous character of the place and defendant's knowledge thereof. District of Columbia v. Arms, 107 U.S. 519, 2 S.Ct. 840, 27 L.Ed. 618; Evans v. Erie R. Co., 6 Cir., 213 F. 129; Chicago & N. W. R. Co. v. Netolicky, 8 Cir., 67 F. 665; Benner v. Terminal R. R. Ass'n of St. Louis, 348 Mo. 928, 156 S.W. 2d 657, certiorari denied 315 U.S. 813, 62 S. Ct. 798, 86 L.Ed. 1211; 20 Am. Jur. 282, Sec. 304. As stated in Lever Bros. Co. v. Atlas Assur. Co., Ltd., et al., 7 Cir., 131 F.2d 770, at page 777: "There are no hard or fast rules as to what degree of similarity there must be to make the evidence admissible. If there is no similarity of conditions, then the evidence would be inadmissible. If there is some similarity of conditions, the weight of that evidence would be in proportion to the evidence of similarity, the greater weight to be given where there is greater similarity and the lesser weight where the similarity is less." We deem the circumstances surrounding the accidents sustained by these switchmen sufficiently similar to that sustained by plaintiff to render the testimony admissible. They attributed their falls to the same conditions encountered by plaintiff and their falls occurred in the same general location, though not at the exact spot of plaintiff's injury. But the differences in detail could be brought out on cross examination and did not require exclusion of the evidence.

█ Conductor T. T. Boothe testified that on November 23, 1944, and by reason of oil along the lead his foot slipped off the step of a moving caboose at a point near the point of plaintiff's accident, and another conductor, A. H. Staffa, testified that in the Spring of 1944 he slipped and fell near the scene of plaintiff's accident while he was attempting to alight from a moving caboose, that the footing was slippery as a result of water, oil and muck coming down off the top of the lead and that the mud and muck and "whatever was washed down on these tracks" caused him to fall. The conductors did not fall in the same manner plaintiff did, but they did fall in the same general area, and the plain import of their testimony was that they too fell because of the oily and slippery condition of the roadbed. In the Lavender case, supra, the Supreme Court reversed a judgment of the Missouri Supreme Court, 189 S.W.2d 253, reversing the trial court's judgment against the trustees of the railroad in an action brought under the Federal Employers' Liability Act. The Missouri court held that the evidence was insufficient and that hearsay evidence had been improperly admitted. The Supreme Court held that the evidence was sufficient, and at page 744 of 66 S.Ct., said:

"In view of the foregoing disposition of the case, it is unnecessary to decide whether the allegedly hearsay testimony was admissible under the res gestae rule. Rulings on the admissibility of evidence must normally be left to the sound discretion of the trial judge in actions under the Federal Employers' Liability Act. But inasmuch as there is adequate support in the record for the jury's verdict apart from the hearsay testimony, we need not determine whether that discretion was abused in this instance."

While it might have been better to have excluded testimony of the conductors, especially that of Staffa which related to an accident remote in time from plaintiff's accident, we hold its admission was not an abuse of discretion. Nor does the record disclose prejudice as a result of the District Court's ruling. It is true there was a conflict in the evidence regarding the condition of the walkway along the lead. But a witness for defendant testified that the ground was oily at the time of the accident and that he had noticed oil there on that morning. Testimony of this and of other witnesses (some called by defendant) was sufficient in itself to justify a finding that there was oil around the lead, that the ground was slippery on the day of the accident, and that this condition had existed for some time. Hence, the material fact to which this evidence related was suffi-

ciently established, not only by plaintiff's other witnesses but by testimony of some of defendant's own witnesses. We are reluctant to reverse a judgment for admission of incompetent evidence of a material fact otherwise proven. Missouri, K. & T. R. Co. v. Elliott, 8 Cir., 102 F. 96; St. Louis & San Francisco R. Co. v. Duke, 8 Cir., 192 F. 306. Furthermore the testimony of Boothe and Staffa related to rather minor and insignificant incidents which, under the circumstances, could have had little if any influence on the jury. Whether prejudice results from erroneous admission of evidence is not to be determined abstractly, but depends upon practical effect viewed in the light of the trial as a whole. United States v. Becktold Co., 8 Cir., 129 F.2d 473.

The appellant in its brief presents argument relating to inconsistencies in the testimony of plaintiff's witnesses and to weight of evidence and credibility of witnesses. But the jury has passed on these questions and we are bound by its decision. Tennant, Adm'x, v. Peoria & Pekin Union R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520.

Other portions of appellant's brief deal with the use to which testimony, especially that admitted over defendant's objection, was put by plaintiff's counsel in his oral argument to the jury, and are directed principally to the issue of prejudice which appellant contends resulted from admission of incompetent testimony. So far as plaintiff's oral argument was directed to testimony of the two conductors it consisted merely of a brief review of that testimony and no special emphasis was placed thereon. If, as suggested by appellant, unjustified inferences were drawn from the evidence in plaintiff's oral argument, the remedy was to point that out to the jury and to object to argument considered by plaintiff to be improper, preserving any adverse ruling for review.

The verdict and judgment are sustained by the evidence and we find no reversible error in the District Court's rulings on admission of testimony. The judgment must be and is affirmed.