**UNITED STATES of America, Appellant,**

v.

**R. S. RAINWATER, Sr., et al., d/b/a R. S. Rainwater & Sons, Appellees.**

**UNITED STATES of America, Appellant,**

v.

**CITIZENS NATIONAL BANK, WALNUT RIDGE, ARKANSAS, Appellee.**

**Nos. 16472, 16473.**

United States Court of Appeals Eighth Circuit.

Nov. 4, 1960.

Kathryn H. Baldwin, Attorney, Civil Division, Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Alan S. Rosenthal and William E. Mullin, Attorneys, Dept. of Justice, Washington, D. C., and Osro Cobb, U. S. Atty., Little Rock, Ark., on the brief, for appellant.

Leon B. Catlett, Little Rock, Ark., Catlett & Henderson, Little Rock, Ark., for appellees.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

REGISTER, District Judge.

The narrow questions presented on these appeals are whether the trial court committed reversible error in excluding witness Blalock's prior written inconsistent statements as substantive evidence, and in directing a verdict in favor of the defendants.[1]

These actions were instituted by the United States of America under the False Claims Act, 31 U.S.C.A. §§ 231–233, against R. S. Rainwater, Sr., Sloan Rainwater and William Rainwater (doing business as a partnership under the name of R. S. Rainwater & Sons), and the Citizens National Bank of Walnut Ridge, Arkansas, and were consolidated for purposes of trial. Two of the defendants in the Rainwater case (No. 16,472) were, at the times here involved, officers of the Citizens National Bank of Walnut Ridge, Arkansas.

In the complaints it is alleged that the defendants (appellees), in connection with their participation in a cotton loan program conducted by the Commodity Credit Corporation (herein referred to as

---

1. A former opinion of this Court in these related cases is reported at 8 Cir., 244 F.2d 27, affirmed 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996. The issues now before the Court were not involved in the previous litigation.

Commodity) under Section 1 of the Agricultural Act of 1948, 62 Stat. 1248, 7 U.S.C.A. § 1301 et seq., and the Commodity Credit Corporation Charter Act, 15 U.S.C.A. § 714, had in the year 1949 presented or caused to be presented to Commodity claims which they knew to be false.

At the trial the United States (plaintiff and appellant) introduced evidence to the effect that the defendants in both cases had entered into Lending Agency Agreements with Commodity and thus became authorized lending agencies under the 1949 Cotton Loan program and subject to the regulations of the program as set out in the 1949 Cotton Bulletin 1, 14 F.R. 3723.

The United States called as a witness W. A. Blalock, who had been during 1949 the manager of the cotton gin operated by R. S. Rainwater & Sons at Bay, Arkansas, for the purpose of establishing that the defendants had then pledged as security for loans from Commodity certain cotton which was ineligible for such purpose and that the documents evidencing such loans (Cotton Producer's Note and Loan Agreement—Commodity Cotton·Form A) were not completed on the dates shown thereon, contrary to the regulations as set forth in the 1949 Cotton Bulletin 1. Such regulations provided that loans could be made only to actual producers of cotton and only on cotton produced by them and owned by them at the time of the loan; also, that loans could be made only upon the tender of duly executed promissory notes on prescribed forms, the date of each note to be the date upon which the lending agency made full disbursement of the loan proceeds to the producer.

In October of 1951 Mr. Blalock had conferred with Horace G. Duke, a Department of Agriculture investigator. Mr. Duke had prepared a summary of 145 bales of cotton which had been pledged as security for loans presented for payment to Commodity by the defendants. After eliminating ten of the bales from the list, and after initialing each page of the summary, Mr. Blalock signed a statement at the bottom thereof that

the remaining 135 bales had been purchased by R. S. Rainwater & Sons and then pledged as security for Commodity loans. Such summary and signed statement is identified as Plaintiff's Trial Exhibit 8. Mr. Blalock had signed another statement (Plaintiff's Trial Exhibit 10) on the same day to the effect that R. S. Rainwater & Sons had, in 1949, an understanding with the cotton producers that if they could not resell the cotton for the amount paid to the producers they could obtain Commodity loans on the cotton, thereby recovering the loan value, and that, in furtherance of this understanding, the producers had signed notes in blank for R. S. Rainwater & Sons to use if it should become necessary for them to pledge the cotton for loans.

On direct examination Mr. Blalock's testimony was, as to the matters hereinbefore referred to, inconsistent with and contrary to the contents of such prior written statements.

The trial court permitted the plaintiff to use its Exhibit 8 to refresh the memory of witness Blalock and thereafter, following claim and assertion of surprise on the part of plaintiff's counsel, permitted its use for impeachment purposes.

Thereafter Mr. Duke was called as a witness by the United States, which offered in evidence, through said witness, its Exhibits 8 and 10 as substantive evidence. Proper and timely objections thereto were made by defendants. Except as to a part of Exhibit 8, which is not here material, such objections were sustained and the Court thereafter, pursuant to motion therefor, directed a verdict in favor of the defendants.

Appellant concedes that the determination of the trial court was in accordance with the well-established rule. However, its position is that, as the witness who made the statements sought to be admitted was present in court and subject to cross-examination, the purpose of the hearsay rule had been satisfied and therefore such rule should not preclude the admission of the statements.

For such contention appellant finds substantial and respectable support

among certain text authorities and legal scholars. After discussing the admissibility of such statements for impeachment purposes, Professor Wigmore states (at pp. 687 and 688, Vol. 3, Wigmore on Evidence, 3rd Ed., Section 1018(b)):

"(b) It does not follow, however, that Prior Self-Contradictions, when admitted, are to be treated as having no *affirmative testimonial* value, and that any such credit is to be strictly denied them in the mind of the tribunal. The only ground for doing so would be the Hearsay rule. But the theory of the Hearsay rule is that an extrajudicial statement is rejected because it was made out of Court by an absent person not subject to cross-examination (post, Sec. 1362). Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the Hearsay rule has been already satisfied. Hence there is nothing to prevent the tribunal from giving such testimonial credit to the extrajudicial statement as it may seem to deserve. Psychologically of course, the one statement is as useful to consider as the other; and everyday experience outside of court-rooms is in accord."

Professor McCormick expresses a similar view and like conclusions in his article, "The Turncoat Witness: Previous Statements as Substantive Evidence", 25 Texas Law Review 573. The American Law Institute in Rule 503(b) of its Model Code of Evidence has adopted a similar view. As its first exception to the traditional hearsay rule, the Model Code provides that "Evidence of a hearsay declaration is admissible if the judge finds that the declarant * * * is present and subject to cross-examination". A like view has also been adopted in the Uniform Code of Evidence promulgated by the National Conference of Commissioners on Uniform State Laws. Rule 63(1) of such Uniform Code makes admissible for all purposes "a statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness". Handbook of the National Conference of Commissioners on Uniform State Laws, 1953, p. 198. The basis for such view is that, as the rights of confrontation and cross-examination are not impaired, such statements are not hearsay and hence the basis for objection to this modification of the rule against hearsay has been removed.

Notwithstanding the foregoing, the well established rule—in both criminal and civil actions—is to the contrary. Following the above quotation from Wigmore, the learned author states: "The contrary view, however, is the orthodox one. It is universally maintained by the Courts that Prior Self-Contradictions are not to be treated as having any *substantive* or *independent testimonial value.*" As basis for this conclusion the author lists a collection of cases supporting the same.

The general rule is likewise recognized by Professor McCormick. "When a witness has changed sides and altered his story or forgets or claims to forget some fact, and his previous statement is received for impeachment purposes, what effect shall be given to the statement as evidence? Under the generally accepted doctrine the statement is not usable as substantive evidence of the facts stated." McCormick on Evidence, Section 39, p. 73.

In 58 American Jurisprudence at page 421 this rule is stated as follows:

"The rule is almost universally recognized that evidence of extrajudicial statements made by a witness who is not a party and whose declarations are not binding as admissions is admissible only to impeach or discredit the witness and is not competent as substantive evidence of the facts to which such statements relate, and this rule is equally applicable where a party im-

peaches his own witness by inconsistent statements * * * . Since the inconsistent statements of a witness are not substantive evidence in the case, they should not be offered as such."

When confronted with this precise question there is virtual unanimity of opinion in the Courts. In the case of Southern Railway Company v. Gray, 241 U.S. 333, 36 S.Ct. 558, 60 L.Ed. 1030, in an effort to discredit the engineer who had been called as a witness, he was asked on cross-examination concerning prior contradictory statements. The Supreme Court of the United States stated, at page 337 of 241 U.S., at page 560 of 36 S.Ct., that: "Of course, the contradictory statements can have no legal tendency to establish the truth of their subject-matter." The language used by the same Court in Hickory v. United States, 151 U.S. 303, 14 S.Ct. 334, 336, 38 L.Ed. 170 is: " * * but proof of the contradictory statement of one's own witness, voluntarily called, and not a party, inasmuch as it would not amount to substantive evidence, and could have no effect but to impair the credit of the witness, was generally not admissible at common law." See also: United States v. Socony-Vacuum Oil Co., Inc. et al., 310 U.S. 150, at page 234, 60 S.Ct. 811, at page 849, 84 L.Ed. 1129, where the Court states that "Likewise there would be error where under the pretext of refreshing a witness' recollection, the prior testimony was introduced as evidence."

In several cases, both civil and criminal, in which this Court was confronted with the specific question here involved, a conclusion directly contrary to appellant's contention was reached. Such contention was carefully and exhaustively considered, examined and rejected by this Court in Ellis v. United States, 8 Cir., 138 F.2d 612. It was therein held specifically that a witness' prior inconsistent statements may not be used to support a criminal conviction.

While conceding as it must that this Court has adhered to the orthodox rule in criminal cases, the appellant here contends that "its decisions respecting the admissibility of such statements in *civil* cases do not reflect an established rule". In support of such conclusion appellant refers to certain language found in London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, and in Chicago, St. P. M. & O. Ry. Co. v. Kulp, 8 Cir., 102 F.2d 352, certiorari denied 307 U.S. 636, 59 S.Ct. 1032, 83 L.Ed. 1518. After carefully examining and discussing Woelfle and Kulp, supra, this Court, in Ellis, supra, concluded that "The issue with which we are here squarely confronted was not before us in either of the two cases just mentioned. Their discussions of the related question must be appraised by the facts and limited to the situations respectively before the court for decision in those proceedings. We do not consider that they require, or even justify, our repudiation of the virtually universal rule denying substantive evidentiary value to impeaching admissions of former inconsistent extra-judicial statements". [138 F.2d 618.]

As is set forth in Ellis, supra, the specific question under consideration here was before this Court in the civil cases of F. W. Martin & Co. v. Cobb, 8 Cir., 110 F.2d 159, and Chicago, St. P. M. & O. Ry. Co. v. Muldowney, 8 Cir., 130 F.2d 971. In each of those cases this Court unequivocally and definitely held that prior inconsistent statements made by a witness, if not a part of the res gestae or not competent as an admission, are admissible solely for impeachment purposes. That this Court has consistently adhered to this doctrine in civil cases is further demonstrated by its decision in the later case of Consolidated Electric Cooperative v. Panhandle E. Pipeline Co., 8 Cir., 1951, 189 F.2d 777, at page 783, wherein this Court stated: "This witness was not an officer of the company and what he may have said at some other time, not being a part of the res gestae, was admissible only for the purpose of impeachment and as going to the credibility of the witness and to the weight of his testimony. This statement by the witness, made in a prior proceeding,

would not constitute affirmative evidence of the facts so stated."

Appellant cites DiCarlo v. United States, 2 Cir., 6 F.2d 364, certiorari denied 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168, in support of its position. This decision also received the attention of this Court in Ellis, supra. In Ellis, supra, at page 620 of 138 F.2d, this Court said: "The persuasiveness of the DiCarlo case upon the point now considered is measurably neutralized or altogether nullified by the Graham case and especially by United States v. Block, 2 Cir., 88 F.2d 618, 620, both Second Circuit Court cases, in the former of which the distinguished writer of the DiCarlo opinion concurred, and in the latter of which he wrote the opinion." In United States v. Graham, 2 Cir., 102 F.2d 436, 442 (the case referred to in the preceding quote from Ellis), the Court stated: "Ordinarily, the impeachment of one's own witness goes only to his credibility. Evidence so elicited is not to be treated as affirmative proof of fact for any other purpose. * * * And the jury should be so instructed. * * * But this evidence became more than impeaching evidence when the issue of subornation of perjury was developed." For our purpose there is no necessity of giving concern to the stated distinction. It is important, on the question now before this Court, only that the Court speaking in Graham expressly recognized and adhered to the general rule.

The orthodox rule has been virtually universally accepted by the courts in both criminal and civil cases. There is no basis in logic or principle in making any distinction between criminal and civil cases when determining the admissibility of this type of evidence. An examination of the cases discloses that no such distinction has been made by this Court, and it is unwilling to depart from such accepted rule in either civil or criminal cases.

Some of the decisions of the Courts of Appeal in other jurisdictions supporting the general rule are: National Labor Relations Board v. Quest-Shon Mark B. Co.,

2 Cir., 185 F.2d 285, certiorari denied 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614; Sickles v. Graybar Electric Company, 7 Cir., 219 F.2d 847, certiorari denied 350 U.S. 827, 76 S.Ct. 57, 100 L.Ed. 739; McCracken v. Richmond, Fredericksburg & Potomac R. Co., 4 Cir., 240 F.2d 484; Holland v. Cooper, 5 Cir., 192 F.2d 214; Woody v. Utah Power & Light Company, 10 Cir., 54 F.2d 220.

The trial court was correct in refusing to admit plaintiff's Trial Exhibits 8 and 10 as substantive evidence. As the record discloses that such exhibits constituted the only substantial evidence offered by plaintiff that would support a verdict, the trial court properly directed a verdict in favor of the defendants.

Affirmed.